**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

April 20, 2006

Charles R. Fulbruge III
Clerk

REVISED MAY 8, 2005
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-60247

JAVIER OTONIEL BUSTAMANTE-BARRERA,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

--------------------
On Petition for Review of an Order of the
Board of Immigration Appeals
--------------------

Before JONES, Chief Judge, WIENER and PRADO, Circuit Judges.

WIENER, Circuit Judge:

Javier Otoniel Bustamante-Barrera ("Petitioner") seeks review of the Board of Immigration Appeal's ("BIA") dismissal of his appeal from an Immigration Judge's ("IJ") order of removal. Petitioner's challenge to the BIA's decision is based on a former version of 8 U.S.C. § 1432(a), under which Petitioner claims to have automatically derived U.S. citizenship when his mother became a naturalized citizen in 1994. Prior to its amendment in 2000, § 1432(a) granted derivative citizenship to a child born outside the United States to alien parents if, before that child's eighteenth birthday, (1) he became a legal permanent resident ("LPR") of the United States, (2) his two living parents "legal[ly] separat[ed]," (3) one (but not both) of his parents became a

naturalized U.S. citizen, and (4) that naturalized parent had "<u>legal custody</u>" of the child.[1] We are concerned today with only the last of these conditions: We must construe § 1432(a)(3)'s "legal custody" requirement to determine whether a child seeking derivative naturalization must have been under the <u>sole</u> (as distinguished from <u>joint</u>) legal custody of his one naturalized parent. This is a question of first impression in this Circuit, and, because we answer it in the affirmative and perceive no merit in any of Petitioner's other arguments, we deny his Petition for Review.

## I. FACTS AND PROCEEDINGS

The facts of this case are not in dispute. Born in Mexico in 1979 to Mexican nationals, Petitioner immigrated here with them in 1983. All three became LPRs of this country that same year. In 1991, Petitioner's parents divorced in California. Their divorce decree awarded his mother "sole <u>physical</u> custody" of Petitioner, but awarded both his parents "joint <u>legal</u> custody."[2] Following his parents' divorce, Petitioner resided exclusively with his mother. By virtue of his parents' joint legal custody, however,

---

[1] 8 U.S.C. § 1432(a) (2000), <u>repealed by</u> Child Citizenship Act of 2000 § 103, Pub. L. No. 106-395, 114 Stat. 1631 (emphasis added). All citations to § 1432(a) herein are to the 2000 version of the U.S. Code. We interpret the pre-Child Citizenship Act version of § 1432(a) because that version was in effect at all times relevant to Petitioner's citizenship claim. See <u>Bagot v. Ashcroft</u>, 398 F.3d 252, 257 & n.3 (3d Cir. 2005).

[2] Emphasis added.

Petitioner's father retained visitation rights.[3]  In 1994, while Petitioner was still a minor under the age of 18, his mother became a naturalized citizen of the United States.  His father never did.

Petitioner's tenure in the United States has not been without legal mishaps.  In 2000, he was convicted in a Texas state court of assault causing bodily injury to a family member.  In 2002, a Texas court again convicted him of assault crimes, this time of aggravated assault with a deadly weapon and assault resulting in a bodily injury, repeat offender.  These latter convictions led not only to a sentence of ten years' imprisonment, but also to the initiation of removal proceedings by the Department of Homeland Security ("DHS") in August 2002.

In those immigration proceedings, DHS asserted two bases for Petitioner's removal: (1) He had been convicted of two crimes involving moral turpitude and not arising out of a single scheme of criminal misconduct[4]; and (2) he had been convicted of an aggravated felony.[5]  Petitioner admitted his convictions but defended against removal by arguing that the IJ lacked jurisdiction

---

[3] The record indicates that Petitioner's mother claimed him as a dependent for tax purposes in 1991, the year that she and Petitioner's father divorced.  Her tax returns for the years 1992-2000 are also in the record, however, and she did not claim Petitioner as a dependent for those years.  Petitioner's father's tax returns are not part of the record, so we do not know whether he claimed Petitioner as a dependent for any year between 1992 and 2000.

[4] See 8 U.S.C. § 1227(a)(2)(A)(ii).

[5] See id. § 1227(a)(2)(A)(iii).

to order Petitioner removed because he is a U.S. citizen. His citizenship, Petitioner insisted, flowed from his meeting the requirements for derivative citizenship under the pre-2000 version of § 1432(a), which automatically granted derivative citizenship to specified classes of children born outside of the United States to alien parents.[6] Before the IJ, Petitioner contended that he satisfied § 1432(a)'s requirements because, at the time of his mother's naturalization, he was (1) under the age of 18, (2) under her legal custody, and (3) residing in the United States as a LPR.

Petitioner appears to have recognized a possible problem with his claim to derivative citizenship, however. As noted earlier, his parents' 1991 divorce decree had granted them joint legal custody; it did not grant his mother sole legal custody. Thus, when Petitioner's mother was naturalized in 1994, his non-citizen father was a legal custodian as well, sharing some parental rights with his ex-wife.

In 2002 —— after the initiation of Petitioner's removal proceedings at a time when he was 23 years old —— his mother sought to eliminate this problem by having his legal custody status changed retroactively. At her request, and without any objection from Petitioner's father, a California court issued a nunc pro tunc amended divorce decree ("amended decree") which purported to award Petitioner's mother sole legal custody retroactively effective to

---

[6] 8 U.S.C. § 1432(a).

February 4, 1991. In support of his mother's request for the amended decree, her lawyer filed a declaration candidly stating that "[t]he purpose" for seeking the order was "to satisfy requirements of the Department of Immigration and Naturalization" in regards to Petitioner. In other words, Petitioner's mother expressly sought the amended decree for the sole purpose of affecting the outcome of her major son's removal proceeding.

Faced with the amended decree, the IJ concluded that Petitioner met the requirements for derivative citizenship under § 1432(a). Reasoning that DHS had not carried its burden of proving that Petitioner was an alien, the IJ terminated the removal proceedings.

DHS appealed the IJ's decision to the BIA, which, in October 2003, reversed in favor of DHS. The BIA interpreted § 1432(a)(3) as requiring that a LPR with two living parents, only one of whom is a naturalized citizen, does not automatically derive citizenship from his naturalized parent unless that parent had <u>sole</u> <u>legal</u> custody over the LPR <u>prior to</u> his eighteenth birthday. Because Petitioner's mother had not been his sole legal custodial parent before his eighteenth birthday, the BIA sustained DHS's appeal. In so doing, the BIA refused to credit the retroactive effect of the California court's amended decree for purposes of removal.

The BIA viewed the amended decree as nothing more than a legal fiction created for the express purpose of manipulating federal immigration and naturalization law. "To allow courts to circumvent

the clear language of the naturalization requirements . . . is contrary to public policy and decades of Supreme Court jurisprudence requiring strict compliance with . . . statutory requirements to obtain citizenship."[7]  The BIA remanded the case to the IJ with instructions to order Petitioner removed, and the IJ did so on remand.

Petitioner appealed the IJ's removal order to the BIA, arguing that by ignoring the amended decree, the BIA (1) overstepped its legal authority; (2) violated the Full Faith and Credit Act[8]; and (3) violated the Equal Protection component of the Fifth Amendment's Due Process Clause.  In March 2005, the BIA rejected each of these arguments "for the reasons stated" in its October 2003 decision.[9]  Petitioner then filed the instant Petition for Review.[10]

---

[7] In re: Bustamante-Barrera, No. A38-097-162, at 3 (BIA Oct. 3, 2003) ("Bustamante-Barrera I").

[8] 28 U.S.C. § 1738.

[9] In re: Bustamante-Barrera, No. A38-097-162, at 1 (BIA Mar. 2, 2005).

[10] Before the BIA, Petitioner did "not contest the argument that" § 1432(a)(3)'s reference to "legal custody" requires sole legal custody. Bustamante-Barrera I at 2.  Instead, it appears that Petitioner raised the argument for the first time in his Petition for Review filed with us.  Ordinarily, we will not consider an argument raised for the first time on appeal, but we do have discretion to do so. See In re HECI Exploration Co., 862 F.2d 513, 521-22 (5th Cir. 1988) (stating that we have discretion to "consider an argument advanced for the first time on appeal," but, "ordinarily[,] only if the issue is a purely legal one and if consideration of the argument is necessary to avoid a miscarriage of justice").  The issue whether § 1432(a)(3)'s reference to "legal

-6-

## II. ANALYSIS

### A.   Jurisdiction

As a general rule, we have jurisdiction to review the BIA's removal orders.[11]  Congress created an exception, however, that deprives us of jurisdiction to review removal orders issued against aliens convicted of, <u>inter alia</u>, an aggravated felony or a crime involving moral turpitude.[12]  Congress has curtailed this jurisdiction strip, though, by making clear that we retain jurisdiction to review "constitutional claims or questions of law" raised in a petition for review filed by a criminal alien.[13]  All four of  Petitioner's claims fall within one or the other of these two categories: Three of his arguments are legal[14] and the fourth

---

custody" requires sole legal custody is purely a legal one.  And, considering the grave consequence facing Petitioner if he fails —— removal from the country in which he grew up —— we consider <u>HECI Exploration Co.</u>'s "miscarriage of justice" requirement to be satisfied.  Moreover, Respondent has not argued that Petitioner waived the argument that § 1432(a)(3) is satisfied by joint legal custody; indeed, Respondent has significantly briefed the question. We thus proceed to consider it.

[11] <u>See</u> 8 U.S.C. § 1252(a)(1).

[12] <u>See</u> <u>id.</u> § 1252(a)(2)(C).

[13] <u>Id.</u> § 1252(a)(2)(D).

[14] Petitioner argues that he derivatively obtained citizenship under § 1432(a) because (1) that provision is satisfied by a grant of joint legal custody over an alien child; (2) despite the California court's grant to his parents of joint legal custody, his mother had effective sole legal custody of him; and (3) the amended decree proves that his mother had sole legal custody of him.

-7-

is constitutional.[15]  We thus have jurisdiction to review each of them, even if it turns out that Petitioner is indeed an alien.

**B.   Bustamante-Barrera's citizenship status under § 1432(a)**

**1.   Standard of review**

We review each of Petitioner's claims de novo.  Under the plain words of 8 U.S.C. § 1252(b)(5)(A), we are empowered to "decide [a putative citizen's] nationality claim" if we "find[] from the pleadings and affidavits that no genuine issue of material fact about [his] nationality is presented."  We agree with the parties that this case presents no material fact issues, so our review of the three legal arguments and one constitutional argument that comprise Petitioner's claim to U.S. citizenship is de novo.[16]

That our review is de novo does not, however, answer whether we must defer to the BIA's interpretation of § 1432(a).  Usually, the BIA's reasonable interpretation of an ambiguous provision of the INA (which, in general, it administers) is entitled to Chevron

---

[15] Petitioner argues that the BIA's application of § 1432(a) violated the equal protection component of the Fifth Amendment's Due Process Clause.

[16] See 8 U.S.C. § 1252(b)(5)(A) ("If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim."); see also Singh v. Gonzales, 436 F.3d 484, 487 (5th Cir. 2006) (stating that we decide legal claims made in a petition for review de novo); Soadjede v. Ashcroft, 324 F.3d 830, 831 (5th Cir. 2003) (stating that we decide constitutional claims made in a petition for review de novo).

deference.[17]  But Chevron deference will apply here only if Congress has delegated authority to the BIA to clarify a statutory ambiguity.[18]  If Congress has not done so, then we are not required to defer to the BIA's interpretation.

There is disagreement among the circuits as to whether the BIA's interpretation of § 1432(a) is entitled to Chevron deference. The Ninth Circuit insists that it is not, reasoning that Congress has delegated responsibility for deciding nationality claims to the federal courts.[19]  That circuit makes the point that 8 U.S.C. §§ 1252(b)(5)(A) and (B) expressly provide that the federal courts "shall decide [a] nationality claim" presented in a petition for review.  The Second Circuit appears to be unconvinced.  It recently accorded Chevron deference to the BIA's interpretation of § 1432(a), albeit without ever questioning whether such deference was warranted.[20]

We have not weighed in on this precise issue, and neither party has briefed it.  In Nehme v. INS, however, we addressed a very similar issue and held that the BIA's interpretation of

---

[17] Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-44 (1984); see Singh, 436 F.3d at 487.

[18] See 467 U.S. at 843-44.

[19] See Minasyan v. Gonzales, 401 F.3d 1069, 1974 (9th Cir. 2005).

[20] See Brissett v. Ashcroft, 363 F.3d 130, 133 (2d Cir. 2004).

-9-

§ 1432(a) is <u>not</u> entitled to <u>Chevron</u> deference.[21] <u>Nehme</u> was decided in the context of determining whether we had <u>jurisdiction</u> to review a removal order issued against a criminal alien.[22] As we stated there, the question whether we have jurisdiction in a particular case is subject to plenary review. In other words, we interpret statutes that operate to deprive us of jurisdiction <u>de novo</u>, without regard to an administrative agencies preferred interpretation of the statute.[23]

<u>Nehme</u>'s holding, however, does not control our interpretation of § 1432(a)(3). After all, our inquiry today is not jurisdictional: It was after we decided <u>Nehme</u> that Congress amended the judicial review provisions of the INA to clarify that we retain jurisdiction over constitutional and legal claims made by a criminal alien in a petition for review.[24] At the time that we decided <u>Nehme</u>, the INA merely deprived us of jurisdiction to entertain petitions for review filed by specific sub-classes of criminal aliens. The question whether the petitioner in <u>Nehme</u> was in fact an alien went straight to our jurisdiction: If he was, we did not have jurisdiction; if he was not, we did. Here, in contrast, § 1252(a)(2)(D) grants us jurisdiction to hear

---

[21] 252 F.3d 415, 420 (5th Cir. 2001).

[22] <u>See id.</u>

[23] <u>Id.</u>

[24] <u>See</u> 8 U.S.C. § 1252(a)(2)(D).

Petitioner's legal and constitutional claims, regardless of whether he is an alien. <u>Nehme</u>'s holding that we must interpret § 1432(a) <u>de novo</u> to determine our jurisdiction is thus not controlling.

For today's purposes, however, the question of <u>Chevron</u>'s applicability is beside the point: As we agree with the BIA's interpretation of § 1432(a), our conclusion in this case would be the same whether we were to interpret the statute <u>de novo</u> or, instead, within <u>Chevron</u>'s framework. If we were operating under <u>Chevron</u>, we would defer to the BIA's interpretation of § 1432(a) as reasonable; and when we interpret the statute <u>de novo</u>, we reach the same conclusion as did the BIA. As we thus would affirm the BIA's interpretation as the appropriate one under either standard of review, we need not determine whether the BIA's interpretation is entitled to <u>Chevron</u> deference.

## 2. Bustamante-Barrera's claim to U.S. citizenship

"There are 'two sources of citizenship, and two only: birth and naturalization.'"[25] As Petitioner was not born in the United States, naturalization is his sole source for a claim of citizenship. Naturalization is available "only as provided by Acts of Congress"[26] and, even then, only "in strict compliance with the terms of" such acts.[27] Petitioner has the burden of proving that

_____

[25] <u>Miller v. Albright</u>, 523 U.S. 420, 423 (1998) (quoting <u>United States v. Wong Kim Ark</u>, 169 U.S. 649, 702 (1898)).

[26] <u>Id.</u> at 424.

[27] <u>INS v. Pangilinan</u>, 486 U.S. 875, 884 (1988).

-11-

he qualifies for naturalization, and he must do so in the face of the Supreme Court's mandate that we resolve all doubts "in favor of the United States and against" those seeking citizenship.[28]

In his claim to derivative naturalization, Petitioner contends that he _automatically_ became a citizen in 1994 when his mother was naturalized. His argument tracks the version of § 1432(a) that was in effect in 1994. It granted derivative citizenship to

> child[ren] born outside of the United States [to] alien parents . . . upon fulfillment of[, _inter alia_,] the following conditions: . . .
>
>> (3) The naturalization of _the_ parent having _legal custody_ of the child _when there has been a legal separation of the parents_ . . . ; and _if_
>>
>> (4) [s]uch _naturalization takes place while_ such child is _under the age of eighteen years_; and
>>
>> (5) [s]uch child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the

custodial parent's naturalization.[29] None dispute that Petitioner satisfies all but one of these conditions: (1) He was born outside of the United States to alien parents; (2) his parents' 1991 divorce (which occurred while he was under the age of 18) qualifies as a "legal separation"; (3) his mother was naturalized while he was under the age of 18; and (4) at the time of his mother's naturalization, Petitioner was residing in the United States as a LPR. Thus, Petitioner's status as a derivatively naturalized

---

[28] _Berenyi v. Dist. Dir., INS_, 385 U.S. 630, 637 (1967).

[29] 8 U.S.C. § 1432(a)(3)-(5) (emphasis added).

citizen turns entirely on § 1432(a)'s fifth condition, viz., whether, before he reached the age of 18, his parents' joint custody regime satisfied § 1432(a)(3)'s requirement that "the" naturalized parent be "the" parent having legal custody.

This case, then, is one of federal statutory interpretation. We must construe the one of § 1432(a)(3)'s express conditions that requires "the parent having legal custody of the child" to have been naturalized and determine whether this condition requires that parent to have had <u>sole</u>, as opposed to <u>joint</u>, legal custody. This issue is one of first impression, not only in this Circuit but also, it appears, in all of the federal circuits.[30] In the end, we

---

[30] Respondent disagrees, contending that all "[t]he courts that have addressed this issue have reached the" conclusion that § 1432(a)(3) requires sole legal custody. In support of this assertion, Respondent cites <u>Minasyan</u>, 401 F.3d at 1069, <u>Batista v. Ashcroft</u>, 270 F.3d 8 (1st Cir. 2001), and <u>Espindola v. Barber</u>, 152 F. Supp. 829 (N.D. Cal. 1957). None of these cases, however, addressed the precise issue we face today. The <u>Minasyan</u> court interpreted a different term from § 1432(a)(3) — "legal separation" — not the phrase at issue today. <u>See</u> 401 F.3d at 1076. The <u>Batista</u> court merely assumed that sole custody is required, but did not engage in an analysis of the issue. <u>See</u> 270 F.3d at 15-16. And in <u>Espindola</u>, it was conceded that the "legal custody" requirement was met. <u>See</u> 152 F. Supp. at 831.

To be sure, other courts have faced similar issues, but none that we have found has faced this precise one. The Third Circuit, for example, interpreted "legal custody" in § 1432(a)(3) to be satisfied when no formal decree has granted either parent legal custody of the child, but the child nonetheless resides in the "actual uncontested custody" of the naturalized parent. <u>See</u> <u>Bagot</u>, 398 F.3d at 266. The First and Ninth circuits have also interpreted "legal custody," but neither court has considered whether § 1432(a)(3) requires sole legal custody. <u>See</u> <u>Fierro v. Reno</u>, 217 F.3d 1 (1st Cir. 2000); <u>Tabucbuc v. Ashcroft</u>, 84 Fed. Appx. 966 (9th Cir. 2004) (unpublished per curiam opinion). And we, along with at least three other circuits, have interpreted the term "legal separation" in § 1432(a)(3). <u>See</u> <u>Minasyan</u>, 401 F.3d at 1069; <u>Brissett</u>, 363 F.3d at 130; <u>Nehme</u>, 252 F.3d at 415;

-13-

hold that only sole legal custody satisfies § 1432(a)(3). Two factors lead us to this conclusion: (1) the text of § 1432(a)(3) and its relation to the overall scheme of the INA; and (2) § 1432(a)'s purpose, as demonstrated by its legislative history. As Petitioner cannot meet his burden of proving that he was in the sole legal custody of his naturalized mother prior to his eighteenth birthday, he cannot obtain derivative citizenship. We must, therefore, deny his petition for review.

### 3. Obtaining derivative citizenship under 8 U.S.C. § 1432(a)

We start with the statute's text. As earlier explained, § 1432(a)(3) grants derivative citizenship to a child born outside of the United States to alien parents only if, inter alia, "the parent having legal custody of the child" has been naturalized. To determine whether these words require sole legal custody, we must construe the entire phrase.

Petitioner would have us frame the issue more narrowly, restricting our interpretation to but two words of this eight-word phrase, "legal custody." Indeed, Petitioner's core argument —— that reading "legal custody" to require "sole legal custody" would be to amend § 1432(a)(3) judicially —— might have more force if "legal custody" were indeed the only words that we must construe. But the words "legal custody" do not stand alone in § 1432(a)(3); rather, they immediately follow, and must be read in pari materia

Wedderburn v. INS, 215 F.3d 795 (7th Cir. 2000). Each of these decisions informs our analysis, but none controls it.

-14-

with, the whole descriptive phrase, which begins with and includes "the parent having." Stated another way, "the parent having legal custody" cannot be parsed to consider, in a vacuum, just "the parent" or "legal custody." The <u>who</u> is "the parent"; but, being singular, more must be known, viz., whether "the" parent in question is the one with "legal custody." The words "the parent" are thus modified by the words "having legal custody." Only together do these words describe <u>who</u> must have "the" legal custody of a child if that child is to derive citizenship.

As noted, Congress chose to identify which progenitor must have legal custody by using the <u>singular form</u> of "parent": A child derives citizenship under § 1432(a)(3) only if "<u>the</u> parent having legal custody of the child" was himself or herself naturalized.[31] Congress's use of the singular form is telling. It leaves no room to dispute that, when only one of two legally separated parents is a naturalized U.S. citizen, that parent is the one who must have legal custody. Had Congress meant that § 1432(a)(3)'s requirements could be met when two legally separated parents shared <u>joint</u> legal custody of a child and only one of those two parents was naturalized, it could have used more inclusive language to signify as much. For example, Congress could easily have specified "the parent <u>or parents</u> having legal custody of the child."

Not surprisingly, Congress has used just such more inclusive language in other parts of the INA where the term "legal custody"

---

[31] 8 U.S.C. § 1432(a)(3) (emphasis added).

is employed.  For example, 8 U.S.C. § 1101(b)(1)(C)[32] defines "child" as used in specified portions of the INA to include, among others, "a child legitimated under the law of the child's residence or domicile, . . . if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation."[33]  And, in § 1101(b)(1)(E)(i), Congress defined "child" to include "a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years."[34]  Finally, 8 U.S.C. § 1101(c)(1), which also defines "child" (but for other portions of the INA), requires that "the child [be] in the legal custody of the legitimating or adopting parent or parents."[35]

By their plain language, these three INA provisions are expressly satisfied either if one of two parents has sole legal custody or if the two parents share joint legal custody. Congress's use of "parent or parents" in these provisions contrasts sharply with its exclusive use of the singular form of "parent" in § 1432(a)(3).  We cannot ignore this distinction between different

---

[32] For consistency's sake, all references in this part of the opinion to provisions in title 8 of the U.S. Code are to the 2000 version of the Code.

[33] 8 U.S.C. § 1101(b)(1)(C) (emphasis added).

[34] 8 U.S.C. § 1101(b)(1)(E)(i) (emphasis added).

[35] 8 U.S.C. § 1101(c)(1) (emphasis added).

provisions in the same statute without violating a well-established canon of statutory construction: We must read the statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous.[36]   Were we to read § 1432(a)(3)'s use of "the parent" (singular) as also permitting <u>joint</u> legal custody, we would effectively read the words "or parents" out of §§ 1101(b) and (c)'s definitions of "child."  This we may not — and will not — do.  Given Congress's use of "parent or parents" in §§ 1101(b) and (c), we are confident that, had Congress intended § 1432(a)(3) to be satisfied by either sole or joint legal custody, it would have used the same words or at least very similar ones.  That it did not do so confirms to us that joint legal custody does not meet § 1432(a)(3)'s requirements.  Only sole legal custody will suffice.

As demonstrated by its legislative history, § 1432(a)'s <u>purpose</u> bolsters our conclusion that the statute requires sole legal custody.  Congress enacted the provision "to ensure that only those alien children whose 'real interests' were located in America with their custodial parent [singular], and not abroad, should be automatically naturalized."[37]   This provision was adopted to "promote marital and family harmony and . . . prevent the child from being separated from an alien parent who has a legal right to

---

[36] See <u>Beck v. Prupis</u>, 529 U.S. 494, 506-07 (2000).

[37] <u>Nehme</u>, 252 F.3d at 425; <u>see also</u> S. Rep. No. 2150, at 4 (1940); 86 Cong. Rec. 11,945-53 (1940); H.R. Rep. No. 82-1365, <u>reprinted in</u> 1952 U.S.C.C.A.N. 1653, 1680.

custody."[38]  In other words, Congress meant for § 1432(a) to protect the rights of <u>both</u> parents for as long as each one of them has legal rights over the child.  This is why, when we were asked in <u>Nehme</u> to determine whether an <u>informal</u> separation of a married couple satisfied § 1432(a)(3)'s "legal separation" requirement, we answered in the negative:

> It makes sense . . . that when the child's parents are still married, the child does not <u>automatically</u> acquire a new citizenship upon the naturalization of only one parent. . . . [W]e think Congress clearly intended that the naturalization of only one parent would result in the automatic naturalization of an alien child only when there has been a formal, <u>judicial</u> alteration of the marital relationship.[39]

After all, only when there has been a "formal . . . alteration of the marital relationship" could the federal courts be confident that the non-custodial, non-naturalized parent truly has no rights over the child.[40]

Other circuits have also interpreted § 1432(a) as serving the purpose of protecting parental rights.  The Ninth Circuit, for example, views § 1432(a) as a measure meant to "prevent[] the naturalizing parent from usurping the parental rights of the alien parent."[41]  And, in <u>dicta</u>, the Seventh Circuit reasoned that § 1432(a) protects parents' rights by "limit[ing] automatic changes

---

[38] <u>Nehme</u>, 252 F.3d at 425.

[39] <u>Id.</u> at 425-26 (emphasis in original).

[40] <u>See</u> <u>id.</u>

[41] <u>Barthelemy v. Ashcroft</u>, 329 F.3d 1062, 1066 (9th Cir. 2003).

[in citizenship] to situations in which the other parent has been removed from the picture — either by death or by 'legal separation.'"[42] A legally separated parent with joint legal custody — such as Petitioner's father — has not "been removed from the picture"[43] to such a degree that he has no legal rights over his child. Thus, the naturalization of such a parent's ex-spouse should not lead to an automatic change in his child's citizenship. That kind of change could seriously interfere with the non-naturalized parent's rights, and thereby undermine § 1432(a)'s purpose.

In addition, interpreting § 1432(a)(3) as amenable to being satisfied by a decree of joint legal custody would lead to an absurd result: (1) not recognizing derivative citizenship when an alien child's parents are married and only one parent is naturalized,[44] while (2) recognizing derivative citizenship when an alien child's parents are legally separated, continue to share legal custody (and thus legal rights) over the child, and only one parent is naturalized. Inasmuch as, in each example, both parents share rights over the child, we can conceive of no non-absurd reason — and Petitioner has furnished us none — why Congress

---

[42] Wedderburn, 215 F.3d at 800 (emphasis added); see also Minasyan, 401 F.3d at 1079; Fierro, 217 F.3d at 6.

[43] Wedderburn, 215 F.3d at 800.

[44] Under 8 U.S.C. § 1432(a)(1), if a child's parents are both living and are not "legal[ly] separat[ed]," then derivative citizenship is available only on "[t]he naturalization of both parents." (Emphasis added).

-19-

would grant derivative citizenship to the child of the legally separated parents but not to the child of the married parents. We decline Petitioner's invitation to read § 1432(a)(3) in a way that reaches such an incongruous result. We hold instead that § 1432(a)(3)'s requirement that "the parent having legal custody of the child" be a naturalized citizen of the United States is satisfied only when but one of two living and legally separated parents is a naturalized U.S. citizen and that parent is vested with the <u>sole</u> legal custody of the child.

**4. Whether, prior to his eighteenth birthday, Bustamante-Barrera was in the sole legal custody of his mother**

Petitioner concedes that the 1991 divorce decree granted his parents <u>joint</u> legal custody. This decree is the only evidence in the record relevant to his custodial status prior to his eighteenth birthday. In the absence of evidence contradicting the 1991 divorce decree, we must conclude that Petitioner did not derive citizenship <u>ipso facto</u> at the time of his mother's subsequent naturalization in 1994.

Petitioner nevertheless advances three arguments to support his derivative citizenship claim. First, he contends that he automatically derived citizenship under § 1432(a) when his mother was naturalized because, even if we disregard the original divorce decree's plain language and meaning under California law, he was, for purposes of federal immigration law, <u>effectively</u> in the sole legal custody of his mother prior to his eighteenth birthday.

Second, Petitioner insists that under the Full Faith and Credit Act,[45] we must apply the amended decree to his naturalization claim under § 1432(a). He notes that the amended decree retroactively grants his mother sole legal custody as of the date of the original judgment of divorce, which was rendered before his eighteenth birthday. Finally, Petitioner contends that our failure to recognize his derivative naturalization would violate the Equal Protection component of the Fifth Amendment's Due Process Clause.

### a. Whether Bustamante-Barrera was **effectively** in the sole legal custody of his mother prior to his eighteenth birthday

On a purely theoretical level, Petitioner's first argument has some appeal —— but not enough to carry the day. Interpretation of § 1432(a)(3) is a matter of **federal law**.[46] And, because of the overarching constitutional interest in uniformity of federal immigration and naturalization laws,[47] we have previously "reject[ed the] contention that the law of any one state should govern the determination" under § 1432(a)(3) "whether an alien child's parents were 'legally separated.'"[48] Especially given Nehme's firm

---

[45] 28 U.S.C. § 1738.

[46] Nehme, 252 F.3d at 422-23.

[47] See U.S. Const. art. I, § 8, cl. 4 (granting Congress the power "[t]o establish an uniform Rule of Naturalization").

[48] Nehme, 252 F.3d at 424 (emphasis added); see also 8 U.S.C. § 1432(a)(3) (granting derivative citizenship to a minor child of alien parents upon "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents") (emphasis added).

-21-

rejection of the contention that the meaning of the term "legal separation" in § 1432(a)(3) is controlled by any given state's domestic relations law, we are satisfied that neither may a child's "legal custody" status be controlled by any one state's law. It is true, at least in theory, that a LPR child seeking derivative citizenship under § 1432(a) might prove that, despite a state's explicit grant of joint legal custody to his parents, he must be regarded as being (or having been) in the sole legal custody of his naturalized parent as a matter of federal law.[49] In this case, however, Petitioner has failed to prove that, for federal naturalization purposes, he should be regarded as having effectively been in the sole legal custody of his mother at the time of her naturalization. In fact, he has offered us no evidence to that effect; he merely asserts as much conclusionally in his brief. Such a bald assertion is not sufficient to meet his burden of proving his claim to citizenship; neither is it enough to create an issue of material fact that would require a hearing before a district court.[50]

---

[49] Cf. Nehme, 252 F.3d at 427 (reasoning that the petitioner could have attempted to prove that, despite his parents' lack of a formal legal separation under state law, they should be regarded as legally separated under federal law).

[50] See 8 U.S.C. § 1252(b)(5)(B) ("If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim . . . ."); Agosto v. INS, 436 U.S. 748, 754-57 (1978) (holding that traditional summary judgment principles govern

### b. The effect of the amended decree

Likewise without merit is Petitioner's second contention, i.e., that, at the time of his mother's naturalization, he met § 1432(a)(3)'s sole legal custody requirement because the 2002 amended decree expressly and retroactively grants her sole legal custody as of the date of her 1991 divorce. Petitioner insists that we are bound by the Full Faith and Credit Act[51] to recognize California's amended decree as having such retroactive effect. We disagree.

Our refusal to credit the amended decree for purposes of federal immigration law does not even implicate the Full Faith and Credit Act. For purposes of § 1432(a), Petitioner's custody status prior to his eighteenth birthday is determined by federal law; it is _not_ dependent on the law of any particular state. True, his custody status under state law might provide evidence of his such status for federal naturalization purposes; yet, even for these purposes, we are not _bound_ by California's determination of his legal relationship with his mother. Stated differently, even assuming _arguendo_ that the state's amended decree retroactively altered Petitioner's relationship with his mother for some

---

the determination whether a petitioner claiming nationality has created an issue of material fact warranting a hearing in the district court).

[51] 28 U.S.C. § 1738. The Full Faith and Credit Act mandates that federal courts accord the same "full faith and credit" to state "judicial proceedings" as other courts of the state from which the state court judgment comes would accord the judgment. _Id._

-23-

legitimate state purpose, we would not be bound to follow the amended decree in determining Petitioner's custody status for purposes of the subject section of the INA. Federal naturalization law exists independent of state family law. Here, we do not question the amended decree's <u>validity</u> —— a question that, in other circumstances, the Full Faith and Credit Act might prohibit our asking. But the Full Faith and Credit Act certainly does not require us to accord that state decree conclusive effect in U.S. <u>naturalization</u> proceedings.

We are not the first court to address the effect of a <u>nunc pro tunc</u> order on a § 1432(a)(3) analysis. Facing similar circumstances in <u>Fierro</u>, the First Circuit rejected the assertion that a <u>nunc pro tunc</u> amended custody decree obtained for the express purpose of affecting the outcome of federal immigration proceedings satisfied § 1432(a)(3)'s "legal custody" requirement.[52] Born in Cuba, Fierro and his parents immigrated to the United States in 1970. When his parents divorced in 1973, his mother was granted custody in the divorce decree.[53] In 1976, Fierro became a LPR, and in 1978, when Fierro was still under the age of 18, his non-custodial father became a naturalized U.S. citizen. Twenty years later, while a middle-aged Fierro was facing removal proceedings, a Massachusetts court entered a <u>nunc pro tunc</u> order that granted his father legal custody effective retroactively to

---

[52] 217 F.3d at 1.

[53] <u>Id.</u> at 2.

-24-

1977.[54]  To obtain that court order, both of Fierro's parents had expressly averred that the post-hoc "modification [of his custody status] is necessary for [him] to derive citizenship through his father and avoid being deported to Cuba."

The Massachusetts court acquiesced and entered the <u>nunc pro tunc</u> order, after which Fierro insisted that he was not removable because he had derived citizenship when his father was naturalized in 1978.  As evidenced by the <u>nunc pro tunc</u> order, argued Fierro, he was in his father's legal custody at that time.  The First Circuit rejected this argument, reasoning, <u>inter alia</u>, that reliance on such an order as the basis of derivative citizenship would open the floodgates for abuse, "allow[ing] . . . state court[s] to create loopholes in the immigration laws on grounds of perceived equity or fairness."[55]

The instant case is strikingly similar to <u>Fierro</u>.  After Petitioner's removal proceeding had been initiated —— which was years after he had reached the age of 18 —— Petitioner's mother was successful in having her 11 year-old divorce decree amended retroactively for the sole purpose of blocking her son's removal from the United States.  We agree with the First Circuit that relying on such a <u>nunc pro tunc</u> order to recognize derivative citizenship would create the potential for significant abuse and manipulation of federal immigration and naturalization law.  We

---

[54] <u>Id.</u>

[55] <u>Id.</u> at 6.

therefore decline to credit it.

We should not, though, be seen as foreclosing any possibility that there could be a situation in which such a nunc pro tunc amended decree could enhance an alien's claim of derivative citizenship under § 1432(a). It is at least possible that circumstances could exist in which such a decree would legitimately demonstrate that an alien child had in fact been in the sole legal custody of his one naturalized parent prior to his eighteenth birthday. This, however, is not such a case. The record here confirms that Petitioner's mother sought the amended decree solely for the purpose of controlling immigration and naturalization law. We refuse to reward such blatant manipulation of federal law.

### c. Bustamante-Barrera's Equal Protection claim

In a last-ditch effort to avoid removal, Petitioner asserts that our refusal to recognize the amended decree as sufficient to satisfy § 1432(a)(3)'s sole legal custody requirement would violate the Equal Protection component of the Fifth Amendment's Due Process Clause. He argues that he is similarly situated to an alien child whose parents' original separation decree placed the child in the sole legal custody of his one naturalized parent. This is so, argues Petitioner, because his "status, as determined by the California court, is legally the same as if he were originally placed in the sole legal custody of his mother at the time of the [original] custody" decree. It would be irrational, he contends, to treat him differently only because a retroactive nunc pro tunc

order —— distinct from an original decree —— dictates his custody status.

This argument too is meritless. As we explained earlier, we need not —— and therefore do not —— rule out the possibility that some set of circumstances might exist in which we would recognize a nunc pro tunc amended divorce decree as sufficient to prove sole legal custody under § 1432(a)(3). In such a hypothetical case, there would be no differential treatment between, on the one hand, a minor child who was unquestionably in the sole legal custody of his naturalized parent from the outset, and, on the other hand, one whose parents' original custody decree placed him in the joint legal custody of both of his parents but who, in actuality, was in the sole legal custody of his one naturalized parent. Petitioner argues that he falls within the latter category and that it would be irrational to treat him differently than children in the former one. But Petitioner does not fall within the latter group: He has shown us no evidence that the amended decree is effective for purposes of federal immigration and naturalization law. On the contrary, the uncontradicted evidence confirms that the amended decree was brazenly obtained for the sole purpose of manipulating federal immigration law and had no legitimate state purpose whatsoever. Petitioner's equal protection claim cannot prevail under such circumstances.

**CONCLUSION**

Having failed to prove that, prior to his eighteenth birthday,

he was in the sole legal custody of his mother, Petitioner has not carried his burden of proving his derivative naturalization under § 1432(a).  His petition for review is, therefore, DENIED.