# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2015

Lyle W. Cayce
Clerk

No. 13-60807

————

HAMID KAMARA, also known as Abdul Karim Kamara, also known as
Abdul Kamara, also known as Abdul Karin Kamara, also known as Karim
Abdul Kamara,

> Petitioner

v.

LORETTA LYNCH, U. S. ATTORNEY GENERAL,

> Respondent

————

Petition for Review of an Order of the
Board of Immigration Appeals

————

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

JONES, Circuit Judge:

Petitioner Hamid Kamara ("Kamara") seeks review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") finding that he lacked derivative United States citizenship under former 8 U.S.C. § 1432(a)(3). We hold that the BIA misinterpreted the reach of this court's decision in *Bustamante-Barrera v. Gonzales*, 447 F.3d 388 (5th Cir. 2006), which requires "sole legal custody" only when an alien minor's parents have a joint custody order following divorce or judicial separation. We **GRANT** the petition and **TRANSFER** pursuant to 8 U.S.C. § 1252(b)(5)(B) to the district court for the judicial district in which Kamara resides.

No. 13-60807

## BACKGROUND

Kamara was born in Sierra Leone on May 7, 1981. On July 16, 1990, Kamara's parents were divorced in Texas. According to the divorce decree, the Texas court made no child custody provision because Kamara and his siblings "reside in Sierra[] Leone[,] West Africa [with their father] and have never been to Texas." In April 1991, Kamara came to the United States as a visitor and became a lawful permanent resident on May 10, 1994, based on a visa petition filed by his mother, Theresa Nuhad Kargbo. On February 20, 1998, Kargbo became a naturalized citizen of the United States; Kamara was sixteen years old at the time. Kamara and Kargbo asserted in affidavits that they had lived together from 1991 to 2000. School records also reflect Kamara's presence in the United States during that time.

In August 2000, Kamara was convicted in a Texas state court of unlawfully carrying a weapon and received a sentence of three days in jail. He was also convicted of possession of marijuana, which resulted in 30 days in jail; and abandoning or endangering a child and theft, which resulted in a 10-month sentence.

Kamara was detained by Immigration & Customs Enforcement ("ICE") and placed in removal proceedings in 2009. The immigration judge terminated the case without prejudice on the belief that Kamara may have been a derivative United States citizen and instructed Kamara to file an N-600 citizenship form with United States Citizenship and Immigration Services ("USCIS"). USCIS denied the N-600. Kamara appealed to the Administrative Appeals Office, which denied Kamara's appeal due to insufficient evidence.

In October 2011, ICE mailed a Notice to Appear to Kamara, alleging that he was removable on the basis of the firearm offense. After the proceedings languished in the immigration court, Kamara filed his Motion to Terminate Removal Proceedings in June 2013 on the ground that he is a U.S. citizen.

2

No. 13-60807

Kamara maintained that the proper standard for derivative citizenship was whether he had been in his mother's "actual uncontested custody" before his eighteenth birthday. The Government did not dispute that Kargbo had physical custody of Kamara, but argued that the Fifth Circuit required a higher standard. The IJ, concluding that he was bound by Fifth Circuit precedent, held that Kamara had failed to show he was in the "sole legal custody" of Kargbo for purposes of derivative citizenship.

Kamara appealed the IJ's ruling unsuccessfully to the BIA and subsequently filed a Petition for Review with this court.

## STANDARD OF REVIEW

In Petitions for Review of a BIA order, questions of law are reviewed de novo. *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 393 & n.16 (5th Cir. 2006).[1]

## DISCUSSION

Since Kamara was over 18 years old at the time the Child Citizenship Act of 2000, 8 U.S.C. § 1431, went into effect, Kamara's naturalization efforts turn on the former version of 8 U.S.C. § 1432, which has been reprinted in full in an appendix to this decision. *Marquez-Marquez v. Gonzales*, 455 F.3d 548, 550 n.3 (5th Cir. 2006). Because Kamara has claimed derivative citizenship under Section 1432(a)(3), he must establish the following: (1) "there has been a legal separation of the parents," (2) Kamara's mother had "legal custody," (3) Kamara's mother naturalized before he turned eighteen, and (4) Kamara

---

[1] "That our review is de novo does not, however, answer whether we must defer to the BIA's interpretation of 8 U.S.C. § 1432(a). Usually, the BIA's reasonable interpretation of an ambiguous provision of the INA (which, in general, it administers) is entitled to *Chevron* deference." *Bustamante-Barrera*, 447 F.3d at 393–94. We have not, however, had the need to consider whether the BIA's interpretation of 8 U.S.C. § 1432 is entitled to deference. *Id.* Today's decision also does not require us to decide the issue of deference because no issue is raised that the BIA's interpretation of Section 1432(a)(3) in *Matter of M-*, 3 I. & N. Dec 850 (CO 1950) was incorrect.

was a lawful permanent resident before he turned eighteen.   8 U.S.C. § 1432(a)(3)–(5) (1994).

The BIA determined that Kamara could not satisfy his burden of proof for naturalization under Section 1432(a)(3).  The IJ felt "bound by" this court's decision in *Bustamante-Barrera*, and therefore Kamara needed to produce a custody order awarding "sole legal custody" to his mother.  Since Kamara's parents' divorce decree did not include a custody award, the IJ held that Kamara could not provide sufficient proof that he met Section 1432(a)(3)'s requirements.  Kamara argued to the BIA that the IJ should have applied an "actual uncontested custody" standard rather than a "sole legal custody" standard.  The BIA, however, adopted the IJ's reasoning and reiterated that the lack of a court-issued custody determination in the divorce decree was fatal for Kamara's derivative citizenship claim.

The only issue in the present case is whether the BIA was correct in reading our decision in *Bustamante-Barrera* as requiring for all cases a "sole legal custody" standard for the "legal custody" requirement in Section 1432(a)(3).  We conclude that *Bustamante-Barrera* is inapplicable to the present case and that Kamara need only prove "actual uncontested custody."

*Bustamante-Barrera* involved a Mexican family that had moved to California.  447 F.3d 388, 390.  Within a few years of their arrival, the parents divorced and entered into a custody agreement awarding sole physical custody to the mother, but awarding joint legal custody.  *Id.*  The mother naturalized prior to the petitioner's eighteenth birthday, while the father never did.  After multiple assault convictions, the petitioner was placed in removal proceedings. *Id.* at 391.  While the proceedings were ongoing, the petitioner's mother had the custody agreement retroactively amended to reflect her sole legal custody. *Id.*  This court stated that the relevant citizenship requirement pertains to "the parent having legal custody of the child" and determined that the dispositive

issue was "whether this condition requires that parent to have had *sole*, as opposed to *joint*, legal custody.  This issue is one of first impression, not only in this Circuit but also, it appears, in all of the federal circuits."  *Id.* at 395 (emphasis in original).  The court held that in such a situation, only sole legal custody sufficed.  *Id.*

The BIA interpreted *Bustamante-Barrera* as rejecting the "actual uncontested custody" standard that has otherwise been the law for six decades. In 1950, the predecessor to the BIA—the Central Office—released a published opinion dealing with the original Section 1432(a)(3) naturalization provision. *Matter of M-*, 3 I. & N. Dec 850 (CO 1950).  In *Matter of M-*, the parents of the person claiming citizenship had gotten an annulment that did not provide any guidance on custody.  *Id.* at 856.  The annulment was treated as a "legal separation" for purposes of Section 1432, but the remaining question was whether there could be "legal custody" without a custody decree.  *Matter of M-* held that "in the absence of judicial determination or judicial or statutory grant of custody in the case of legal separation of the parent of a person claiming citizenship under section [1432(a)(3)], the parent having actual uncontested custody is to be regarded as having 'legal custody'. . . ."  *Id.*  Since 1950, the BIA has consistently applied *Matter of M-* to cases lacking custody agreements. *See, e.g.*, *In Re: Victor Inginio Cuevas*, No. A42 698 172 - ATTI, 2008 WL 3919065, at \*1 (BIA July 25, 2008) (unpublished).  Indeed, the Second Circuit noted that "*Matter of M-* has been the law for sixty-one years without congressional intervention."  *Garcia v. USICE (Dep't of Homeland Sec.)*, 669 F.3d 91, 96 (2d Cir. 2011).  "Thus, *Matter of M-* provides a two-step test of legal custody.  First, if there is a 'judicial determination or judicial or statutory grant of custody,' then the parent to whom custody has been granted has legal custody for INA purposes."  *Bagot v. Ashcroft*, 398 F.3d 252, 259 (3d Cir. 2005).

No. 13-60807

In the absence of a determination, "then the parent in 'actual uncontested custody' is deemed to have legal custody." *Id.*

Other circuits have uniformly applied the two-step *Matter of M-* analysis to cases lacking a custody agreement. *See Garcia v. USICE*, 669 F.3d 91, 97 (2d Cir. 2011) ("This case thus turns then on who had 'actual uncontested custody' of Garcia when his father naturalized...."); *Bagot v. Ashcroft*, 398 F.3d 252, 263 (3d Cir. 2005) (applying the "actual uncontested custody" standard to almost identical facts that featured an absence of a custody order). The cases that do not directly implicate *Matter of M-* still cite the holding approvingly. *See Wedderburn v. INS*, 215 F.3d 795, 797, 799 (7th Cir. 2000) (citing *Matter of M-*, but noting its inapplicability to the issues raised by the case); *Minasyan v. Gonzales*, 401 F.3d 1069, 1076 & n.12 (9th Cir. 2005) (government conceded the issue of legal custody because the "actual uncontested custody" standard was met and *Matter of M-* was applicable).

*Bustamante-Barrera* did not replace the uniformly followed *Matter of M-* two-step framework with a "sole legal custody" standard, but instead refined the *Matter of M-* analysis to require sole legal custody in cases featuring a joint custody order. On its face, our court's opinion narrowly defines the issue: whether Section 1432(a)(3)'s use of "legal custody" "requires that parent to have had *sole*, as opposed to *joint*, legal custody." *Bustamante-Barrera*, 447 F.3d at 395. The court did not set out to define a new standard to be applied in all cases, only to analyze whether a joint custody order, combined with actual physical custody, was sufficient to prove a naturalized citizen parent's "legal custody" under the statute. Although it does not directly mention *Matter of M-*, the opinion focuses entirely on *Matter of M-'s* first step— the existence of a formal custody award—and refines that inquiry. Lending further weight to the point that the opinion did not create a new standard for all cases, the opinion describes the principal issue as "one of first impression,

6

not only in this Circuit but also, it appears, in all of the federal circuits." *Id.* Had *Bustamante-Barrera* been interpreting the general standard for "legal custody" under Section 1432(a)(3), it certainly would not have confronted an issue of first impression, as the cases from other circuits and the BIA illustrate. Moreover, the opinion distinguishes in a footnote a case much like this one, in which there was no custody order. *Id.* at 395 n.30 (citing *Bagot*, 398 F.3d at 263). Because *Bustamante-Barrera* clearly addressed only cases featuring a formal custody order, the court did not disturb *Matter of M-*, and the BIA erred in holding otherwise.

"Sole legal custody" is not a higher standard than *Matter of M-*'s "actual uncontested custody" standard, it is just a different inquiry that arises when a formal custody order exists. It would be incoherent to say that this court requires evidence of sole legal custody in cases lacking any formal custody order. But when placed within the *Matter of M-* framework, the two standards are compatible. The first step is to determine whether a custody order exists. If the answer is yes, *Bustamante-Barrera* asks whether that order authorized sole legal custody. If no custody award exists, then under the second portion of the *Matter of M-* analysis, the question becomes whether the naturalized parent exercised "actual uncontested custody." *Bustamante-Barrera* is best understood as creating step 1(a) for the *Matter of M-* analysis.

Although the *Bustamante-Barrera* "sole legal custody" rule is inapplicable to the present case, the reasoning behind the opinion is instructive for considering the scope of "actual uncontested custody." *Bustamante-Barrera* recognized that one purpose of Section 1432 is to protect the parental rights of a non-naturalizing parent who still possesses and may want to exercise his or her parental rights. *Bustamante-Barrera*, 447 F.3d at 397. Because conferring automatic derivative citizenship through Section 1432 may disturb those rights, this court stated that the non-naturalizing parent must be sufficiently

"removed from the picture." *Id.* at 398.  Accordingly, the "uncontested" facet of "actual uncontested custody" is illuminated by this reasoning.  The fact that a child continuously lives with the naturalized parent is not enough to satisfy the "uncontested" requirement of *Matter of M-.*  In order to protect the non-naturalized parent, there must be persuasive, sufficient proof of inaction or acquiescence by the other parent to show that he or she has been "removed from the picture."  *See id*; *cf. Matter of M-,* 3 I. &N. Dec. at 851 (noting the presence of an affidavit from the non-naturalized parent that illustrated the naturalized parent had been solely tasked with raising the child).

Applying the proper standard to this case, Kamara's school records indicate that Kamara's mother had actual custody from 1991 to 2000.  Genuine issues of material fact remain, however, as to whether the actual custody was *uncontested*.  Kamara bears the burden of proving by a preponderance of credible evidence that he qualifies for naturalization, *Ayton v. Holder*, 686 F.3d 331, 335 (5th Cir. 2012), and the court must "resolve all doubts in favor of the United States and against those seeking citizenship," *Bustamante-Barrera*, 447 F.3d at 394–95 (internal quotation and citation omitted).  We remand this case pursuant to 8 U.S.C. § 1252(b)(5)(B) to the district court for the judicial district in which Kamara resides for a new hearing on his nationality claim.

The Petition for Review of the Board of Immigration Appeals' order is **GRANTED** and the matter is **TRANSFERRED** to the United States District Court for the Southern District of Texas.

No. 13-60807

**APPENDIX**

8 U.S.C. § 1432 (1994) provides as follows:

(a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

(b) Subsection (a) of this section shall apply to an adopted child only if the child is residing in the United States at the time of naturalization of such adoptive parent or parents, in the custody of his adoptive parent or parents, pursuant to a lawful admission for permanent residence.