United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 6, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-60436

CLAUDIA LORENA MARQUEZ-MARQUEZ,
a.k.a. CLAUDIA MORENO-MARQUEZ,
a.k.a. CLAUDIA MORENO,

Petitioner,

versus

ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

Petitions for Review of an Order from
the Board of Immigration Appeals

Before GARWOOD, DAVIS and GARZA, Circuit Judges.

GARWOOD, Circuit Judge:

Claudia Lorena Marquez-Marquez, also known as Claudia Marquez-Moreno, (Moreno) petitions for review of an order by the Board of Immigration Appeals (BIA) affirming the Immigration Judge's order that Moreno be removed from the United States. We hold that under the undisputed facts Moreno did not automatically obtain U.S. citizenship pursuant to section 301(g) of the Immigration and Naturalization Act, 8 U.S.C. § 1401(g), by virtue of her adoption by a U.S. citizen. Having no other claim to U.S. citizenship,

Moreno is an alien.  She is removable by reason of having committed a criminal offense covered by 8 U.S.C. § 1227(a)(2)(B) (and likewise by 8 U.S.C. § 1227(a)(2)(A)(iii)).  Accordingly, under 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to review her challenge (which does not fall within section 1252(a)(2)(D)) to the rulings of the Immigration Judge (IJ) and the BIA denying her relief under former section 212(c) on the basis that in the exercise of discretion she did not merit and was not deserving of such relief.

## Facts and Proceedings Below

The undisputed facts respecting Moreno's citizenship are as follows.  She was born in Mexico on September 1, 1971, to unmarried Mexican citizens.  In June 1973, in Mexico, her mother married Manuel Moreno (Manuel), a U.S. citizen.  Manuel was born in the United States in 1933 and prior to 1971 had been physically present in the United States for not less than ten years, at least five of which were after 1947.  In 1976, on Manuel's application, Moreno was admitted to the United States as a lawful permanent resident.  On December 16, 1980, Manuel adopted Moreno as his daughter in a New Mexico state court proceeding.  There is no claim (nor any evidence) of any relationship between Manuel and Moreno's mother (or between Manuel and Moreno) prior to 1973.  In 1993, when Moreno was 21, her mother became a naturalized citizen of the United States.

2

Moreno dropped out of high school in her junior year and began cohabiting with Gustavo Soto. The two of them frequently used drugs and often supported themselves by selling drugs. In October 1993, Moreno participated with Soto and others in the illegal transportation of marihuana by motor vehicle from Las Cruces, New Mexico to a location on Interstate Highway 25 in the vicinity of Truth or Consequences, New Mexico. The marihuana was moved in one vehicle and Moreno and Soto were in a separate vehicle looking out for police. Moreno and Soto were arrested, charged, and released on bail. Moreno then fled with Soto to Mexico, and she became the subject of a federal warrant as a fugitive. After becoming frightened by Soto's abusive conduct towards her, Moreno returned to the United States and surrendered to federal authorities. In August 1994, Moreno, pursuant to a plea agreement, pled guilty to, and was convicted of, possession with intent to distribute more than 50 kilograms of marihuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, and in October 1994 she was sentenced for that offence by the United States District Court for the District of New Mexico to five years' probation.

Moreno abstained from drugs between 1996 and early 1998, but then began to frequent a "party house" in Las Cruces where she frequently used cocaine.[1] Moreno was at this house with a number

---

[1]In early 1998 Moreno took her two children (whose father is Soto), then approximately five and ten years old, to live with her mother and Manuel, who subsequently adopted them.

of people on an evening in June 1998, when Ty Lowery (Lowery) was murdered. In July 1998, based on accusations from some of those present, Moreno was arrested and charged with murder, conspiracy, and false imprisonment. In October 1999 New Mexico state court proceedings, Moreno, following a jury trial, was acquitted of both the murder and conspiracy charges, but was convicted of falsely imprisoning Lowery, and in January 2000 she was sentenced to three years' imprisonment.[2]

In May 2000, the New Mexico federal district court revoked Moreno's probation for her 1994 drug conviction and sentenced her to serve 72 months in prison for that possession with intent to distribute offense.

While she was serving her federal sentence, Moreno filed an application with the U.S. Citizenship and Immigration Services (CIS) seeking a determination that she is a U.S. citizen. On July 1, 2004, the CIS denied Moreno's application after concluding that Moreno had not met the requirements of sections 320 or 321 of the Immigration and Naturalization Act (INA).[3] The CIS noted that

_____

[2]Adam Montoya was convicted of murdering Lowrey (as well as of kidnapping, false imprisonment and conspiracy), but on appeal his murder conviction was reversed due to an erroneous jury instruction and the case was remanded for a new trial on the murder charge (the convictions on the other offenses being affirmed). *See State v. Montoya*, 61 P.3d 793 (N.M. 2002). *See also State v. Toney*, 40 P.3d 1002 (N.M. 2002). Before the IJ, Moreno testified that she did not commit the offense of false imprisonment and stated that she "plead the Fifth at my [1999 New Mexico] trial" but that others testified against her there.

[3]Although section 320 of the INA was amended by the Child Citizenship Act of 2000 (CCA), 8 U.S.C. § 1431, the CIS did not consider the amendments because Moreno's eighteenth birthday occurred prior to the enactment of the CCA. *See Nehme v. I.N.S.*, 252 F.3d 415, 431 (5th Cir. 2001) (noting that the CCA's

4

these sections refer to derivative citizenship *after* birth.  The CIS explicitly did not consider section 301 of the INA, codified as 8 U.S.C. § 1401, because it noted that adoption does not establish the "blood relationship" required by section 301 for obtaining citizenship at birth.

On March 5, 2004, the Department of Homeland Security (DHS) served Moreno with a Notice to Appear (NTA) alleging that she was an alien subject to removal based on each of her two prior convictions.  Specifically, the DHS alleged that Moreno's 1994 drug trafficking conviction was an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B),[4] making Moreno subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii),[5] and that it was also a controlled substance offense, making Moreno subject to removal under 8 U.S.C.

---

"amended automatic naturalization provisions only [apply] to alien children who satisfy the statute's conditions on or after February 27, 2001," including the condition "that the child be under eighteen years of age").  Similarly, although the CCA also repealed section 321 of the INA, the CIS nonetheless reviewed Moreno's application for eligibility under section 321 (formerly codified at 8 U.S.C. § 1432; *see Fierro v. Reno*, 217 F.3d 1, 7-9 (1st Cir. 2000)).  Under both sections, however, the CIS correctly determined that Moreno is not eligible for derivative citizenship because her mother did not become a U.S. citizen until after Moreno's eighteenth birthday.  Moreno does not contend otherwise.

[4]Section 1101(a)(43)(B) defines the following conduct as an aggravated felony: "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B).  Under 18 U.S.C. § 924(c), the term "drug trafficking crime" includes "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2).  Moreno's 1994 conviction was for a felony punishable under the Controlled Substances Act.

[5]Section 1227(a)(2)(A)(iii) provides, "Any alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).

5

§ 1227(a)(2)(B)(i).[6] In the NTA, the DHS further alleged that Moreno's conviction of false imprisonment in New Mexico was a crime of violence and thus an aggravated felony under 8 U.S.C. § 1101(a)(43)(F),[7] making Moreno subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii).

At her Dallas, Texas removal hearing, Moreno claimed that she is a U.S. citizen under 8 U.S.C. § 1401(g), section 301(g) of the INA, by virtue of her 1980 adoption by a U.S. citizen, Manuel, and, therefore, that she is not subject to removal. In the alternative, Moreno argued that she is eligible for, and she requested, discretionary relief under INA former section 212(c)[8] for her 1994

---

[6]Section 1227(a)(2)(B)(i) provides, "Any alien who at any time after admission has been convicted of a violation of . . any law or regulation . . . relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i).

[7]Under section 1101(a)(43)(F), the following is considered an aggravated felony: "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." Section 16 of Title 18 defines a crime of violence as
> "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16.

[8]At the time of Moreno's 1994 guilty plea, § 212(c) of the INA, codified as 8 U.S.C. § 1182(c), provided:
> "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a

6

drug-trafficking conviction.  She further argued that she was not removable based only on her 1999 false-imprisonment conviction because it was not a crime of violence and, therefore, not an aggravated felony.

On November 30, 2004, the immigration judge (IJ) rejected Moreno's argument for citizenship, agreeing with the CIS's decision that nothing in 8 U.S.C. § 1401(g) (INA section 301(g)) would have conferred citizenship on Moreno.  The IJ also noted that 8 U.S.C. § 1433 (INA section 322) was applicable to Moreno at the time of her adoption but that it required the filing of a petition by Manuel prior to Moreno's eighteenth birthday and no such petition was ever filed.

After determining that under the undisputed facts Moreno was an alien, the IJ reviewed other evidence, including that related to her prior convictions, and then stated

> "the question of whether or not the respondent should be granted the sec. 212(c) waiver as a matter of discretion will be addressed first, without regard to the respondent's eligibility and whether or not the 1994 felony conviction in the United States District Court and

---

term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c) (1994) (repealed 1996).
Although § 212(c) was repealed in 1996 (IIRIRA, Pub. L. 104-208, § 304(b), 110 Stat. 3609-597), it was in effect when Moreno pleaded guilty in 1994.  The Supreme Court has held that "§ 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *I.N.S. v. St. Cyr*, 121 S.Ct. 2271, 2293 (2001).  Moreover, although the terms of § 212(c) would appear to apply only to the admission of returning aliens, it was interpreted by the BIA and the courts to allow certain removable aliens to apply for a discretionary waiver.  *Id.* at 2276.

the 1998 [sic] conviction in New Mexico are aggravated felonies."

There follows a lengthy discussion of the evidence and matters pertaining to the exercise of section 212(c) discretion, which the IJ concludes by stating, "In the exercise of discretion, the court holds that the respondent is not entitled to a waiver of any grounds of inadmissibility." In the next section of his opinion, the IJ addresses whether Moreno's conviction of false imprisonment (contrary to New Mexico Statutes Ann. 1978 § 30-4-3) was for an aggravated felony, and, citing, *inter alia*, *United States v. Zamora*, 222 F.3d 756 (10th Cir. 2000), concludes that because it was a crime of violence under 18 U.S.C. § 16, it was hence an aggravated felony. The IJ's opinion concludes with his formal "findings," namely: that Moreno is an alien, not a citizen; that she "has been convicted of two crimes, both of which are aggravated felonies. The first was a drug trafficking crime and the second was a crime of violence"; that she "has served more than five years imprisonment for the first felony" and "more than one year of imprisonment for the second felony"; that "respondent . . . does not warrant a grant of relief as a matter of discretion under section 212(c)"; and that "respondent is subject to removal as charged." The opinion concludes by ordering that "All relief from removal sought herein is denied" and that Moreno be removed to Mexico "for the reasons indicated in her form I-862" (the NTA).

8

On April 20, 2005, the BIA affirmed the decision of the IJ. The BIA essentially agreed with the IJ's analysis of Moreno's claim for citizenship, stating:

> "The respondent maintains that she became a United States citizen pursuant to section 301(g) of the Act in 1980 when, at the age of 10, she was adopted by her United States citizen father. We disagree. Section 301(g) of the Act relates to individuals who acquire United States citizenship *at birth*; it does not provide for the acquisition of citizenship after birth, by adoption or any other means. . . . The respondent concedes that her biological parents were unmarried Mexican citizens at the time of her birth in Mexico in September 1971, and the administrative record does not reflect that the respondent's birth mother was married to the respondent's adoptive father at the time of her birth. . . . Because all required statutory conditions for citizenship were not met at the time of the respondent's birth in 1971, the respondent is not a United States citizen by operation of section 301(g) of the Act or former section 301(a)(7) – the statutory predecessor to section 301(g) that was in effect in 1971."

The BIA then turned to the issue of deportability and affirmed the IJ's finding that Moreno was deportable by reason of each of her prior convictions.[9]

The BIA next addressed former section 212(c). It began by stating "[t]he Immigration Judge determined that the respondent did

---

[9]With respect to her prior drug conviction, the BIA noted that "respondent does not dispute that" it "would render her deportable as charged if she were an alien." As to the false imprisonment conviction, the BIA agreed with the IJ that it was an aggravated felony under § 1101(a)(43)(F) because the sentence was for three years' confinement and the offense was a crime of violence under 18 U.S.C. § 16(b), citing *Zamora* and stating, on analogy to the discussion of why burglary is a § 16(b) offense in *Leocal v. Ashcroft*, 125 S.Ct. 377, 383 (2004), that "an individual who undertakes to confine or restrain another unlawfully and without consent necessarily disregards the substantial risk that in the course of committing that offense he will intentionally use physical force against another, either to effect the victim's restraint or confinement in the first instance or to overcome the victim's resistance or both."

9

not merit section 212(c) relief in the exercise of discretion, and given the very serious adverse discretionary considerations present in this case we find no basis for reversing that determination on appeal." It then went on to state: "*Alternatively*, however, we also hold that respondent is not statutorily eligible for section 212(c) relief for two reasons." (emphasis added).[10]

At the end of its next, and concluding, paragraph, the BIA states: ". . . the respondent is neither statutorily eligible for section 212(c) relief nor deserving of such relief in the exercise of discretion."

On May 20, 2005, Moreno timely filed with this court her petition for review of the BIA's decision.[11]

**Discussion**

*I.   Jurisdiction and Standard of Review*

---

[10]The two reasons were: first, that there is no ground of inadmissibility under § 212(a) (8 U.S.C. § 1182(a)) substantially equivalent to the false imprisonment conviction; and, second that § 212(c) relief remains available only as to aliens as whom the 1996 amendment or repeal of § 212(c) was impermissibly retroactive, and it was not so as to respondent because her false imprisonment conviction was in 1999.

[11]On April 27, 2005, Moreno filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Texas, Dallas Division, challenging her removal order; sometime after May 20, 2005, and before any merits action was taken in that case, the district court entered its order transferring the case to this court (where it was converted to a petition for review of the BIA's April 20, 2005 order and merged into the same cause in this court as that arising from Moreno's petition for review filed May 20, 2005) pursuant to § 106 of the REAL ID Act of May 11, 2005, Pub. L. No. 109-13, 119 Stat. 231, 310-311. *See, e.g., Ramirez-Molina v. Zigler*, 436 F.3d 508, 512 (5th Cir. 2006) ("Congress provided that a habeas petition pending before a district court as of the REAL ID Act's effective date was to be transferred to the appropriate court of appeals and converted into a petition for review").

10

We have limited jurisdiction under 8 U.S.C. § 1252 to review a final order of removal. We can review Moreno's claim to be a national of the United States, and decide such claim if, as here, the pleadings and affidavits reflect that no genuine issue of material fact about the petitioner's nationality is presented. 8 U.S.C. § 1252(b)(5). Section 1252(a)(2) subparagraph (B) precludes our jurisdiction to review the there referenced denials of discretionary relief, and section 1252(a)(2) subparagraph (C) precludes our "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii), (B), (C), or (D) of this title," but under section 1252(a)(2) subparagraph(D), the jurisdictional restrictions of subparagraphs (B) and (C) (and other jurisdictional restrictions contained in Chapter 12 of Title 8 other than section 1252) do not preclude our review of "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(B), (C) and (D). *See also, e.g., Ramirez-Molina v. Zigler*, 436 F.3d 508, 513-14 (5th Cir. 2006). We do, of course, also have jurisdiction to determine our own jurisdiction. *Lopez-Elias v. Reno*, 209 F.3d 788, 791 & n.3 (5th Cir. 2000).

Moreno's nationality claim is a question of law that we review *de novo*. *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004). As Moreno was concededly born outside of the United States and its

11

outlying possessions, the following from our recent opinion in *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394-95 (5th Cir. 2006), is applicable:

> "As Petitioner was not born in the United States, naturalization is his sole source for a claim of citizenship. Naturalization is available only as provided by Acts of Congress and, even then, only in strict compliance with the terms of such acts. Petitioner has the burden of proving that he qualifies for naturalization, and he must do so in the face of the Supreme Court's mandate that we resolve all doubts in favor of the United States and against those seeking citizenship." (internal quotations and footnotes omitted).[12]

## II. *Nationality Claim*

Moreno argues that she is a citizen under section 301(g) of the INA, 8 U.S.C. § 1401(g), by virtue of her 1980 adoption by Manuel, a U.S. citizen. At Moreno's birth in September 1971 what is now section 1401(g) was codified as 8 U.S.C. § 1401(a)(7) and provided in relevant part as follows:

> "(a) The following shall be nationals and citizens of the United States at birth:

---

[12]In *Alwan* we held that, because our jurisdiction was predicated on § 1252(b)(5)(A) and (C) and we were directed to decide the issue, we hence did not give deference, under *Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.*, 104 S.Ct. 2778 (1984), to the BIA's legal conclusions respecting the meaning of "a national of the United States" under 8 U.S.C. § 1101(a)(22). *See Alwan*, 388 F.3d at 510, 513. In *Nehme v. INS*, 252 F.3d 415, 421 (5th Cir. 2001), we held *Chevron* deference was not due the BIA's interpretation of citizenship under 8 U.S.C. § 1432 because our jurisdiction turned on that question. However, in *Bustamante-Barrera,* 447 F.3d at 394, we stated that *Nehme* was not controlling on the *Chevron* issue because our jurisdiction no longer turned simply on § 1252(b)(5) but was also supplied by § 1252(a)(2)(D), enacted post-*Nehme* (and post-*Alwan*) as part of the REAL ID Act. This same reasoning would appear to also apply to *Alwan*'s holding as to *Chevron* deference. In *Bustamante-Barrera* we declined to ultimately resolve the *Chevron* deference issue because we "would affirm the BIA's interpretation" with or without *Chevron* deference. 447 F.3d at 394. The same is true here respecting the citizenship issue.

12

. . . [paragraphs (1) through (6)]

(7) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years; *Provided* . . . [stating other ways citizen parent physical presence requirement could be satisfied in relation to certain governmental service] . . . This proviso shall be applicable to persons born on or after December 24, 1952, to the same extent as if it had become effective in its present form on that date."[13]

---

[13]The entirety of § 1401(a) as in effect in September 1971 was as follows:

"§ 1401.  Nationals and citizens of United States at birth.

(a) The following shall be nationals and citizens of the United States at birth:

(1) a person born in the United States, and subject to the jurisdiction thereof;

(2) a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe. *Provided*, That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property;

(3) a person born outside of the United States and its outlying possessions of parents both of whom are citizens of the United States and one of whom has had a residence in the United States or one of its outlying possessions, prior to the birth of such person;

(4) a person born outside of the United States and its outlying possessions of parents one of whom is a citizen of the United States who has been physically present in the United States or one of its outlying possessions for a continuous period of one year prior to the birth of such person, and the other of whom is a national, but not a citizen of the United States;

(5) a person born in an outlying possession of the United States of parents one of whom is a citizen of the United States who has been physically present in the United States or one of its outlying possessions for a continuous period of one year at any time prior to the birth of such

13

At the time of Moreno's adoption in 1980, section 1401(a) had been

amended (Pub. L. 95-432, October 10, 1978, § 3, 92 Stat. 1046) by

eliminating the "(a)" just before "The following" and redesignating

---

person;

(6) a person of unknown parentage found in the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States;

(7) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years; *Provided*, That any periods of honorable service in the Armed Forces of the United States, or periods of employment with the United States Government or with an international organization as that term is defined in section 288 of Title 22 by such citizen parent, or any periods during which such citizen parent is physically present abroad as the dependent unmarried son or daughter and a member of the household of a person (A) honorably serving with the Armed Forces of the United States, or (B) employed by the United States Government or an international organization as defined in section 288 of Title 22, may be included in order to satisfy the physical-presence requirement of this paragraph. This proviso shall be applicable to persons born on or after December 24, 1952, to the same extent as if it had become effective in its present form on that date."

In 1971 § 1401 also contained subsections (b) and (c) which provided, with certain exceptions, that persons born abroad after May 24, 1934 and who became a citizen at birth under § 1401(a)(7) would lose his citizenship if he did not come to the United States before age 23 and be continuously present there for at least five years after age 14 and before age 28. (June 27, 1952, c. 477, Title III, ch. 1, § 301, 66 Stat. 235). In 1972 § 1401(b) was amended further to provide that the person gaining citizenship under § 1401(a)(7) would lose that citizenship unless either coming to the United States and remaining there continuously for two years between ages 14 and 28 or the alien parent is naturalized while the child is under 18 and the child commences prior to age 18 to permanently reside in the United States. The same 1972 legislation added § 1401(d) providing that § 1401(b) would not affect the citizenship of those who came to the United States prior to 1972 and immediately thereafter commenced to comply with the requirements of § 1401(b) as it existed before the 1972 legislation. October 27, 1972, Pub. L. 92-584, 68 Stat. 1289. In 1978 §§ 1401(b), (c) and (d) were repealed (and the "(a)" preceding "The following" in § 1401(a) was removed and its paragraphs (1) through(7) were designated (a) through(g)). Pub. L. 95-432, October 10, 1978, 92 Stat. 1046.

14

each of the paragraphs formerly designated (1) through (7) as (a) through (g), so that section 1401 began

> **"§ 1401. Nationals and citizens of United States at birth**
>
> The following shall be nationals and citizens of the United States at birth:"

and continued with the same seven paragraphs which were formerly designated as (1) through (7) (see note 13 *supra*) and were now designated as (a) through (g), respectively, but without any other change in the text of any of such paragraphs. Thus, what was formerly section 1401(a)(7) became section 1401(g).[14]

Moreno concedes that she was born outside the geographical limits of the United States and its outlying possessions, that neither of her biological parents was a U.S. citizen at the time of her birth, and that U.S. citizen Manuel, who adopted her in 1980, was not married to her mother when she was born in 1971.

---

[14]Since 1980 the only changes in § 1401 have been the following: in 1986 § 1401(g) was amended by substituting "five years, at least two" for "ten years, at least five" (concerning the "physically present" requirement applicable to the United States citizen parent) (Pub. L. 99-653, November 14, 1986, § 12, 100 Stat. 3657); and, in 1994 an additional paragraph – paragraph (h) – was added (October 25, 1994, Pub. L. 103-416, Title I, § 101(a), 108 Stat. 4306) as follows:

> "(h) a person born before noon (Eastern Standard Time) May 24, 1934, outside the limits and jurisdiction of the United States of an alien father and a mother who is a citizen of the United States who, prior to the birth of such person, had resided in the United States."

This 1994 legislation adding new paragraph (h) expressly made that paragraph retroactive as if it had been in effect on the date of birth of the person in question (with certain exceptions). Pub. L. 103-416 § 101.

15

Nonetheless, she argues that she became "of" a U.S. citizen parent when Manuel adopted her in 1980. Moreno places great emphasis on Congress's use of the preposition "of" in section 301(g) rather than the preposition "to", which Congress used elsewhere in the INA, for example section 301(b).[15] Moreno argues that Congress's use of the preposition "of" means that the word "born" is modified only by *where* and not by *to whom*, such that Congress did not intend to require a blood relationship between the child and the U.S. citizen and that Congress also created no requirement that the child's relationship with the U.S. citizen date from the child's birth.

Our plain reading of section 301, however, convinces us that Moreno's argument is without merit. Section 301 does not address citizenship through adoption, and its text explicitly addresses only citizenship "at birth" ("[t]he following shall be nationals and citizens of the United States at birth"). Moreover, section 301(g) requires that the "person" be "born . . . of" a citizen parent, obviously reflecting a relationship *when* "born." That reading is likewise enhanced by section 301(g)'s express requirement that the citizen parent's United States residency prerequisites be all fulfilled "prior to the birth of such person,"

---

[15]Using the preposition "to", section 301(b) (formerly § 1401(a)(2)) provides, in relevant part, that "a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe" shall be a national and citizen of the United States at birth. 8 U.S.C. § 1401(b). See note 13 *supra*.

a requirement that would be pointless if the citizen parent could first become the parent of such person more than a decade after the person's birth.

We also note that section 301 is titled "Nationals and citizens of United States at birth" and is found in part I of subchapter III of the INA, which is titled "Nationality at Birth and Collective Naturalization."[16] On the other hand, with part II, titled "Nationality Through Naturalization," Congress established the means by which foreign-born children adopted by a U.S. citizen could obtain citizenship, namely section 322 of the INA, codified as 8 U.S.C. § 1433.[17] Under Moreno's reading of section 301(g), the

---

[16]By noting the relevant titles, we do not imply that we find any ambiguity in the text of § 1401(g). We recognize that "a title alone is not controlling," *I.N.S. v. St. Cyr*, 121 S.Ct. 2271, 2284 (2001), but the title does not stand "alone," as the statutory text expressly speaks to citizenship "at birth."

[17]At the time of Moreno's adoption in 1980, § 1433 provided:
**"1433. Children born outside United States**
**(a) Naturalization on petition of citizen parents; requirements**
A child born outside of the United States, one or both of whose parents is at the time of petitioning for the naturalization of the child, a citizen of the United States, either by birth or naturalization, may be naturalized if under the age of eighteen years and not otherwise disqualified from becoming a citizen by reason of section 1424, 1425, 1426, or 1429 of this title, and if residing permanently in the United States, with the citizen parent, pursuant to a lawful admission for permanent residence, on the petition of such citizen parent, upon compliance with all the provisions of this subchapter, except that no particular period of residence or physical presence in the United States shall be required. If the child is of tender years he may presumed to be of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States.
**(b) Adopted children**
Subsection (a) of this section shall apply to a child adopted while under the age of sixteen years who is residing in the United States, in the custody of the adoptive parent or parents, pursuant to a lawful admission for permanent residence." 8 U.S.C. § 1433 (1980).

We note that in her briefs to this court Moreno mentions testimony by Manuel that, at some unspecified time following his adoption of Moreno in 1980, he (and her mother) went to the El Paso INS informing them that he had adopted

17

requirement to petition for naturalization under section 322 would only apply in cases where the citizen parent did not meet the residency requirements of section 301(g).  Moreno provides no authority for this novel reading of the interaction between these two sections, and we find her argument unpersuasive.

Moreno relies on two opinions from the Ninth Circuit that have rejected the Government's interpretation that section 301(g) requires a blood relationship between the U.S. citizen parent and the child born outside the United States.  In *Scales v. I.N.S.*, 232 F.3d 1159 (9th Cir. 2000), the petitioner's biological mother was an alien who was married to a U.S. citizen at the time of (and prior to) petitioner's birth.  The U.S. citizen was *not* the petitioner's biological father, but, because he was married to petitioner's mother at the time of petitioner's birth, the court found that petitioner had acquired citizenship at birth under section 301(g).  *Id.* at 1166.  In *Scales*, the Government relied on the State Department's Foreign Affairs Manual, which provided that, "[a]bsent a blood relationship between the child and the parent on whose citizenship the child's own claim is based, U.S. citizenship is not acquired."  *Id.* at 1165.  In rejecting the Government's

Moreno and asking "if we need to do anything else for" Moreno – referring (Moreno's brief contends) to making her a citizen – and the INS "say no, that we need anything else.  So, then we just went back home."  When asked by Moreno's counsel "Who was it that told you you didn't need to do anything else?", Manuel responded "It was like a receptionist there, the one that we talked to.  When you go into the office there in El Paso."  That is all the evidence on that matter. Moreno makes no argument that this evidence has any legal significance, nor was any such argument made below.

interpretation of section 301(g), the court noted that Congress had explicitly required a blood relationship in section 309[18] of the INA, which addressed children born out of wedlock, and that no similar requirement existed under section 301(g) for a child born in wedlock. *Id.* at 1165–66.[19]

---

[18]Section 309, codified as 8 U.S.C. § 1409, provides in relevant part:
**"Children born out of wedlock**
(a) The provisions of paragraphs (c), (d), (e), and (g) of section 1401 of this title, and of paragraph (2) of section 1408 of this title, shall apply as of the date of birth to a person born out of wedlock if--
> (1) a blood relationship between the person and the father is established by clear and convincing evidence,
> (2) the father had the nationality of the United States at the time of the person's birth,
> (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and
> (4) while the person is under the age of 18 years--
> > (A) the person is legitimated under the law of the person's residence or domicile,
> > (B) the father acknowledges paternity of the person in writing under oath, or
> > (C) the paternity of the person is established by adjudication of a competent court."
8 U.S.C. § 1409(a).

[19]*Scales* explains:

"The statutory provisions concerning citizenship do not address the situation presented here, where *the child is 'legitimate' by virtue of his parents being married at the time of his birth*, yet he may not be the 'natural,' or biological, child of the citizen parent. Section 1401(g) . . . *does not address whether being 'born of parents' requires only that the person be born in wedlock, or,* as the BIA concluded, *that there must be a blood relationship* between the person claiming citizenship and the citizen parent. A straightforward reading of § 1401 indicates, however, that there is no requirement of a blood relationship. . . .

The INA *does* expressly *require a blood relationship* between a person claiming citizenship and a citizen father, *if the person is born out of wedlock*. *See* 8 U.S.C. § 1409(a)(1) (setting forth legitimation requirements for a person born out of wedlock to a citizen father). This provision *does not apply to Petitioner, however, because he was born to parents who were married at the time of his birth*." 232 F.3d at 1164 (footnote omitted, emphasis added).

19

In *Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005), the court addressed a similar situation as in *Scales*, except that the biological father was an alien and his wife was a U.S. citizen. The biological mother was also an alien but at birth she virtually immediately abandoned the child to the biological father and his wife. The U.S. citizen was listed as the child's mother on his birth certificate, although she conceded that she is not his biological mother. *Id.* at 1091–92. The Ninth Circuit decided that, under California law, because the petitioner in *Solis-Espinoza* had been acknowledged by the father and accepted into the family by the father's U.S. citizen wife, who was married to the father when the petitioner was born, the petitioner was "for all purposes legitimate from the time of his birth." *Id.* at 1094 (internal quotations omitted). The *Solis-Espinoza* court concluded, therefore, that the petitioner was *not* born out of wedlock, and, following its holding in *Scales* that section 301(g) does not require a blood relationship for a child born in wedlock, the court determined that the petitioner was a citizen under section 301(g). *Id.*[20]

---

[20]*Solis-Espinoza* states:

". . . Solis-Espinoza was 'for all purposes legitimate' from the time of his birth. Since he was not 'born out of wedlock,' under our decision in *Scales* the blood relationship requirement of § 1409 does not apply to him and he is entitled to be recognized as a citizen under § 1401." 401 F.3d at 1094.

We do not need to decide whether we agree with the Ninth Circuit's interpretation that section 301(g) imposes no requirement of a blood relationship to the citizen parent for children born in wedlock,[21] because, assuming *arguendo* that we adopt that interpretation, Moreno's claim to citizenship under section 301(g) still fails. Although the court in *Scales* and *Solis-Espinoza* found that neither child was born "out of wedlock," and therefore did not require a blood relationship with the U.S. citizen parent, it did not ignore the explicit requirement that the circumstances described by section 301(g) be met *at birth*.[22] In both *Scales* and *Solis-Espinoza*, the court analyzed the circumstances existing at the petitioner's birth, and found in each case that one of the petitioner's biological parents was married to a U.S. citizen *at*

---

[21]We do note, however, that the Ninth Circuit's analysis in both *Scales* and *Solis-Espinoza* included the definition of "child" as provided in 8 U.S.C. § 1101(c)(1). This is only worth noting because § 1401(g), which the court was interpreting, does not use the word "child." In her brief to this court, Moreno also emphasizes the definition for "child" provided in section 1101(c)(1). We do not doubt that Moreno became Manuel's "child" by the 1980 adoption, but that has no bearing on whether Moreno obtained citizenship under § 1401(g).

[22]Moreover, in an unpublished opinion in 2003 (after *Scales*), the Ninth Circuit firmly rejected an argument similar to the one Moreno makes here:
"Crider contends that he qualifies under this provision [§ 1401(c) pertaining to persons "born outside the United States of parents both of whom are citizens of the United States"] because he was 'born outside of the United States' and both of his (later-adopting) parents are citizens. But Crider clearly was not born outside the United States 'of parents both of whom are citizens.' Crider was born of parents neither of whom were or are citizens of the United States. He could not have been a citizen 'at birth.' *There is no conceivable way to place him within the reach of §301*."
*Crider v. Ashcroft*, 74 Fed.Appx. 729, 730 (9th Cir. 2003) (unpublished) (citing *INS v. Pangilinan*, 108 S.Ct. 2210 (1988) for the proposition that citizenship provisions must be strictly construed) (emphasis added).

21

*the time of the petitioner's birth*.[23]  In Moreno's case, however, there is no dispute that she was born in September 1971 out of wedlock to two alien parents and that her alien mother and U.S. citizen Manuel were not married to each other until June 1973 and that Manuel did not even know Moreno or her mother before 1973.[24]

Moreno further argues that Manuel must be regarded as her biological father – with the relationship between them hence necessarily subsisting since her birth – because that is the law of New Mexico and is hence entitled to full faith and credit under Article IV, § 1 of the Constitution and 28 U.S.C. § 1738.  We reject this contention.  By such reasoning, Moreno would be a citizen under section 1401(g) when born in 1971 *even if* Manuel had never known Moreno before 1979, and had never married or even known her mother, merely because he adopted Moreno in December 1980.  For the reasons previously stated, giving such a retroactive effect to the 1980 adoption is obviously contrary to section 1401(g) which, without any mention of adoption, confers citizenship "at birth" to those "born" abroad "of" an alien and a citizen parent who "prior to the birth of such person" had been physically present in the

[23]We also note that both *Scales*, 232 F.3d at 1162, and *Solis-Espinoza*, 401 F.3d at 1092, expressly state that "[T]he applicable law for transmitting citizenship to a child born abroad where one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth" (internal quotation marks and citation omitted).

[24]As Moreno was born out of wedlock, one would logically look first to section 309 to determine whether Moreno obtained citizenship at birth.  As noted, however, citizenship under section 309 requires, *inter alia*, that, when a person is born, one of the person's biological parents be a U.S. citizen, and Moreno concedes that she does not meet this requirement.

22

United States for specified periods.  Congress has the power to "establish an Uniform Rule of Naturalization," U.S. Const., art. 1, § 8, cl. 4, and we have long recognized that Congress "has a completely free hand in defining citizenship as it relates to persons born abroad." *Villanueva-Jurado v. INS,* 482 F.2d 886, 887 (5th Cir. 1973).  *See, e.g., Fierro v. Reno*, 217 F.3d 1, 3-4, 6 (1st Cir. 2000) (state law change in custody though validly retroactive under state law not given retroactive effect for purpose of former 8 U.S.C. § 1432(a)).[25]

Moreno's interpretation of section 301(g) is not correct, and her claim for citizenship at birth (or at adoption) under section 301(g) fails.  Furthermore, Moreno has not shown, nor does she argue, that she meets the requirements to become a naturalized citizen under part II of subchapter III of the INA.  Therefore, under 8 U.S.C. § 1252(b)(5), we find that Moreno has presented no genuine issue of material fact about her nationality, and we hold that she is an alien subject to removal under the INA.

### III.  *Discretionary relief under section 212(c)*

Moreno does not dispute that, if she is an alien, she is removable by virtue of her 1994 conviction for a drug trafficking offense.  Her only claim is that she is eligible for, and was

---

[25]We cited *Fierro* with approval in *Nehme v. INS*, 252 F.3d 415, 422, 425 (5th Cir. 2001).

wrongfully denied, section 212(c) relief available to her under *St. Cyr*. See note 8 *supra*.

Both the IJ and the BIA, in the exercise of discretion, denied section 212(c) relief expressly on the basis that Moreno did not merit the favorable exercise of discretionary relief thereunder.

As amended by the REAL ID Act, section 1252(a)(2) subparagraph (C) precludes our jurisdiction over an order of removal against an alien "removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii), (B), (C), or (D)," but subparagraph (D) of section 1252(a)(2) provides that "[n]othing in subparagraph (B) or (C)" will preclude "review of constitutional claims or questions of law." Because Moreno's 1994 drug trafficking conviction is an offense covered in 8 U.S.C. § 1227(a)(2)(B), and likewise because it is an offense covered by section 1227(a)(2)(A)(iii),[26] section 1252(a)(2)(C) deprives us of jurisdiction to review Moreno's claim that the IJ and BIA erred in determining that in the exercise of discretion Moreno did not merit section 212(c) relief, *unless* her challenge to that determination presents a constitutional claim or a question of law for purposes of section 1252(a)(2)(D). While a challenge to a determination that an alien is statutorily ineligible for discretionary relief does present a question of law, a challenge to a determination that in the exercise of discretion favorable relief under section 212(c)

---

[26]See notes 4, 5 and 6, and accompanying text, *supra*.

is not merited does *not* present a question of law or a constitutional claim, and hence such a challenge does not fall within section 1252(a)(2)(D). We squarely so held in *Delgado-Reynua v. Gonzales*, ___ F.3d ___ (No. 04-21019, 5th Cir. May 23, 2006, slip op. 2642, 2645-46, 2006 WL 1390264) where we said:

> "[the REAL ID Act] amended the INA to limit appellate jurisdiction over petitions for review in cases such as this, where petitioner is an aggravated felon, to solely 'constitutional claims or questions of law.' 8 U.S.C. § 1252(a)(2)(D) . . . Although Delgado-Reynua phrases his argument in legal terms, he uses those terms to cloak a request for review of the BIA's discretionary decision, which is not a question of law. . . . We dismiss for lack of jurisdiction Delgado-Reynua's petition in so far as it challenges the BIA's denial of section 212(c) discretionary relief from removal."

*See also, e.g., St. Cyr*, 121 S.Ct. 2271 at 2283 ("Traditionally, courts recognized a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other"); *Hadwani v. Gonzales*, 445 F.3d 798, 800-01 (5th Cir. 2006) (denial of discretionary relief of adjustment of status under 8 U.S.C. § 1255 does not present a constitutional claim or a question of law); *Bravo v. Ashcroft*, 341 F.3d 590 (5th Cir. 2003) (discretionary denial of cancellation of removal under 8 U.S.C. § 1229b(b)(1), the successor to section 212(c), *see St. Cyr*, 121 S.Ct. 2271 at 2277, presents no legal or constitutional issue); *Lopez-Castellanos v. Gonzales*, 437 F.3d 848, 854 (9th Cir. 2006) (denial of 8 U.S.C. § 1229b(b) discretionary relief based on conclusion that prior conviction, which did not per

25

se render alien ineligible for such relief, demonstrated that he lacked the good moral character required for such relief was a non-reviewable discretionary decision).

Accordingly, because the IJ and the BIA in the exercise of discretion denied Moreno section 212(c) relief on the basis that Moreno did not merit the favorable exercise of discretionary relief thereunder, we have no jurisdiction to review Moreno's complaints respecting the denial of section 212(c) relief.[27]

**Conclusion**

Under 8 U.S.C. § 1252(a)(2)(C), we are barred from reviewing the decision to deny Moreno section 212(c) relief in the exercise of discretion, and Moreno has raised no constitutional claim or question of law under 8 U.S.C. § 1252(a)(2)(D) that would allow us to set aside that discretionary denial of section 212(c) relief. Finally, because Moreno is an alien who is removable for her 1994 drug trafficking conviction under 8 U.S.C. §§ 1227(a)(2)(A)(iii)

---

[27]This renders irrelevant the *alternative* determinations made below that in any event Moreno's prior convictions rendered her statutorily ineligible for § 212(c) relief, and hence we do not reach Moreno's contentions that such eligibility determinations were legally incorrect. Even if Moreno were correct in that respect, so that she *was* statutorily *eligible* for section 212(c) relief, that would not affect the result because the clear primary holding of the IJ and BIA is that assuming Moreno was statutorily eligible for section 212(c) relief such relief nevertheless should, in the exercise of discretion, be denied because of the discretionary determination that she did not merit it. *Cf. Ekasinta v. Gonzales*, 415 F.3d 1188, 1191 (10th Cir. 2005) (where one ground of decision is discretionary and non-reviewable, there is no jurisdiction to review alternate ground).

and (B)(i), we are barred from reviewing her removal order by 8 U.S.C. § 1252(a)(2)(C).  Moreno's petition for review is

DENIED.