**Chadworth ROBERTSON-DEWAR, Petitioner,**

v.

**Michael MUKASEY, U.S. Attorney General, et al., Respondents.**

**No. EP–08–CV–323–KC.**

United States District Court, W.D. Texas, El Paso Division.

Feb. 25, 2009.

Chadworth Robertson–Dewar, El Paso, TX, pro se.

Eduardo R. Castillo, Magdalena G. Jara, Assistant United States Attorneys, Jose J. Tavarez, Special Assistant U.S. Attorney, Immigration and Customs Enforcement, El Paso, TX, for Respondents.

### ORDER

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Petitioner's pro se "[Petition for] Writ of Man-

damus [U]nder 28 U.S.C. § 1361[,] Motion Pursuant to [ ] 28 U.S.C. § 2241[, a]nd Complaint for Declaratory Judgment Pursuant to [ ] 28 U.S.C. § 2201" ("Petition") (Doc. No. 5). For the reasons set forth herein, the Petition is hereby **DISMISSED** without prejudice. Additionally, the United States Citizenship and Immigration Services ("CIS") Decision, dated December 18, 2006, is hereby **VACATED** as improvidently granted.

## I.  BACKGROUND

The following derives from the Petition, and the exhibits attached thereto; "Respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" ("Respondents' Motion") (Doc. No. 10), and the exhibits attached thereto; Petitioner's "Response to Motion to Dismiss [and] Motion for Summary Judgment" ("Petitioner's Response") (Doc. No. 12); "Respondents' Reply to Petitioner's Response to Respondents' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" ("Respondents' Reply") (Doc. No. 13); Petitioner's "Summary Judgment Affidavit" ("Petitioner's Affidavit") (Doc. No. 17), and the exhibits attached thereto; Petitioner's "Motion Requesting Leave to Clarify [T]hese Proceedings, Motion Requesting a Clearer or More Definite Statement or, in the [A]lternative, Motion for Judgment on the Pleadings[ ]" ("Petitioner's Motion") (Doc. No. 21); "Respondents' Response to Petitioner's Motion for Judgment on the Pleadings" ("Respondents' Response") (Doc. No. 23), and the exhibits attached thereto; "Petitioner's Reply to Respondents' Response to Petitioner's Motion for Judgment on the Pleadings[ ]" ("Petitioner's Reply") (Doc. No. 25); "Respondents' Supplemental Brief" (Doc. No. 22), and the exhibit attached thereto; and Petitioner's "Supplemental Court Ordered Briefing in Regards to Jurisdiction [and] Response to Respondents' Court Ordered Briefing[ ]" ("Petitioner's Supplemental Brief") (Doc. No. 24), and the exhibits attached thereto.

Petitioner Chadworth Robertson–Dewar was born in Jamaica on June 28, 1980. Pet. 8; Resp't's Mot. 2. Petitioner's father, Owen Dewar, emigrated to the United States after Petitioner's birth and became a United States citizen on October 15, 1993. Pet. 8; Resp't's Mot. 2. Petitioner's mother remained in Jamaica. Pet. 8–9. On February 10, 1993, at the age of twelve, Petitioner entered the United States as a lawful permanent resident. Pet. 9; Resp't's Mot. 2.

On January 10, 1996, when Petitioner was fifteen years old, Petitioner's father submitted an "Application for Certificate of Citizenship" ("Application") on Petitioner's behalf. Pet. 9; Resp't's Resp. 3. The Application remained unadjudicated when, on January 7, 2003, after being convicted of several counts of sexual abuse of children, Petitioner was sentenced by the Court of Common Pleas of Centre County, Pennsylvania. *See* Resp't's Mot. Exs. A, B.

Petitioner states that, after completing his sentence, he was immediately transferred to the custody of United States Immigration and Customs Enforcement ("ICE"). Pet. 9–10. Respondents only confirm that Petitioner was apprehended by ICE "on or about December 14, 2006," and was served with a Notice to Appear in removal proceedings. Resp't's Mot. 2; *see also id.* Ex. C at 1–2. The Notice to Appear, superseded by a new Notice on January 4, 2007, charged that Petitioner is subject to removal from the United States as a non-citizen who committed an aggravated felony. *See id.* Ex. C at 1, 3.

On the date of Petitioner's apprehension, his Application remained unadjudicated; at that point, it had been pending for

3,992 days. However, on December 18, 2006, only three days after Petitioner's apprehension, the CIS issued a Decision denying the Application. Pet. Ex. H–2. The Decision stated that the Application was filed by Petitioner, and explained that it was denied because Petitioner's mother was never a United States citizen. *Id.* Ex. H–3. The denial concluded that "[Petitioner] did not derive citizenship from the naturalization of [his] father." *Id.*

Petitioner was soon transferred to a detention facility in Otero County, New Mexico, pending his removal proceedings before the United States Immigration Court, El Paso, Texas ("Immigration Court"). Pet. 11; *id.* Ex. H–9. On April 26, 2007, Petitioner filed a Motion to Terminate Removal Proceedings with the Immigration Court. *Id.* Ex. H–9. Petitioner argued that, due to administrative neglect and affirmative misconduct, the CIS should be collaterally estopped from denying his Application and that ICE should thus be estopped from initiating removal proceedings. *Id.* Ex. H–7 at 1. Additionally, Petitioner claimed that the CIS adjudicated Petitioner's application under the incorrect statute, and therefore denied it for erroneous (and irrelevant) reasons. *Id.* at 5–6.

On May 4, 2007, the United States Department of Homeland Security ("DHS") filed a "[ ] Non–Opposition to [Petitioner's] Motion for Termination." Resp't's Mot. Ex. E. The Motion stated that Petitioner "facially meets" the requirements for citizenship based on the law "at the time that [Petitioner's] father filed [Petitioner's Application]." *Id.* However, the DHS "remind[ed Petitioner] that further action is required on his part to complete the citizenship process." *Id.* (bold, underline, and

italics omitted). The Motion further stated that "if [Petitioner] does not ... complet[e] the citizenship process *within the next several years,* the DHS will re-initiate removal proceedings...." *Id.* (emphasis added; bold, underline, and italics omitted).

On May 7, 2007, the Immigration Court issued an order terminating Petitioner's removal proceedings without prejudice. *Id.* Ex. F. Petitioner was subsequently released from custody. Resp't's Mot. 3.

Petitioner states that the Immigration Court's order was the only form of identification provided to him upon his release. Pet. 12. In part because of a lack of identification, Petitioner "was forced to stay in a homeless shelter where he was attacked by a drunken resident, and thereafter under bridges, in abandoned and derelict buildings and occasionally on the couches of acquaintances." *Id.* at 3. Petitioner was also unable to obtain citizenship. *Id.* at 13–14.

On September 4, 2007, Petitioner filed an Application to Replace Permanent Resident Card. *Id.* Exs. H–13, H–14.[1] This "prompted [the] CIS to review Petitioner's criminal and immigration case history." Resp't's Mot. 3. At the time of the review, Petitioner had spent less than one year attempting to complete the citizenship process, and the CIS was not aware of any change in Petitioner's criminal history. *See id.* Ex. G. at 2. Nevertheless, a new Notice to Appear was issued on November 30, 2007. *Id.* Ex. H.

On the date Petitioner's new Notice to Appear was issued, several members of ICE's Fugitive Operations Team proceeded to Petitioner's last known address, a homeless shelter. *Id.* Ex. G. at 2. After

---

1. Respondents state that Petitioner made this filing on October 10, 2007. Resp't's Mot. 3; *id.* Ex. G at 2.

learning that Petitioner frequented an El Paso public library, three officers initiated surveillance at that library. *Id.* The officers encountered Petitioner entering the library, arrested him, and transported him for immigration processing. *Id.* at 2–3. After taking Petitioner into custody, the officers learned that Petitioner had an outstanding warrant, dated November 9, 2007, for failure to register as a sex offender in Texas. *Id.*[2]

On August 28, 2008, Petitioner filed his Petition. The Petition reiterates his argument that the Government should be estopped from denying Petitioner's citizenship and initiating removal proceedings because Petitioner's Application was unlawfully delayed before being incorrectly denied. Pet. 1. Petitioner requests that this Court issue a writ of mandamus, pursuant to 28 U.S.C. § 1361, ordering Respondents to properly process Petitioner's Application *nunc pro tunc;* or declare that Petitioner was a citizen as of 1996, pursuant to 28 U.S.C. § 2201. *Id.* at 26.

On October 9, 2008, pursuant to this Court's Order, Sept. 3, 2008 (Doc. No. 7), Respondents filed their Motion. Respondents requested that this Court dismiss the instant case for lack of subject matter jurisdiction and failure to state a claim. Resp't's Mot. 4. Respondents stated that because Petitioner has placed his citizenship in issue in his removal proceeding, this Court is precluded from considering his citizenship in a declaratory judgment action. *Id.* at 4–5. Respondents then argued that this Court lacks habeas corpus jurisdiction because "an alien who claims to have acquired citizenship through derivation must raise the issue before the immigration judge." *Id.* at 6. Finally, Respondents argued that Petitioner failed to exhaust his administrative remedies. *Id.* In support of their exhustion argument, Respondents relied on 8 U.S.C. § 1252(d)(1), which requires administrative exhaustion before a court "may review a final order of removal...." They argued that this provision applies because "Petitioner has been ordered removed." Resp't's Mot. 6. In the same Motion, Respondents also stated that Petitioner's hearing before the Immigration Court was scheduled for October 22, 2008. *Id.* at 7.

On October 21, 2008, Petitioner filed his Response. Petitioner noted that he had not been ordered removed, as he had not yet had a hearing. Pet'r's Resp. 1. Further, Petitioner argued that he "does not now assert a claim of United States citizenship," but asserts that he would be a citizen but for the Government's misconduct. *Id.* On October 27, 2008, Respondents filed their Reply. Respondents stated that their Motion contained an error and "should have read 'Petitioner has <u>not</u> been ordered removed....'" Resp't's Reply 1–2 (underline in original). However, Respondents did not explain how they believed § 1252(d)(1) would have remained relevant if the typographical error had been corrected. Additionally, while Respondents' Reply was filed after the date on which Respondents had previously stated that Petitioner's hearing was scheduled, Respondents did not inform the Court of the result of that hearing, or, in fact, whether the hearing was conducted. On December 19, 2008, this Court ordered the parties to submit additional briefing regarding the status of Petitioner's removal proceedings. Order, Dec. 19, 2008 (Doc. No. 20).

---

**2.** Petitioner's Apprehension Data also indicates that ICE believed Petitioner's Application was submitted by Petitioner "during ... removal proceedings." *Id.* However, all parties in the instant case concede that the Application was filed ten years prior to removal proceedings.

On January 5, 2009, Petitioner filed his Motion. Petitioner requested that the Court treat his original Petition as one for mandamus relief. Pet'r's Mot. 6. Additionally, Petitioner requested that his Response be treated as a motion for judgment on the pleadings. *Id.* at 11. On January 15, 2009, Respondents filed their Response. Respondents reiterated their previous claims, and further alleged that Petitioner's application was "not adjudicated, in part, due to the negligence of Petitioner and his father...." Resp't's Resp. 5. Respondents included an envelope marked "return to sender," sent to Petitioner's father on March 1, 1997, as well as a Notice of Interview which was presumably included in that envelope. *Id.* Exs. A, B. The address on the envelope was different than the address on the Notice. *See id.* Exs. A, B. On February 4, 2009, Petitioner filed his Reply.

Finally, Respondents filed their Supplemental Brief on January 7, 2009. On January 21, 2009, Petitioner submitted his Supplemental Brief, which included an order from the Immigration Court. That order, issued January 2, 2009, first noted that on October 31, 2008, the Immigration Court determined that Petitioner was not removable as charged in his Notice to Appear. Pet'r's Supplemental Br. Ex. SB–1 at 2. However, after the DHS modified the charge against Petitioner, the Immigration Court "ordered [Petitioner] removed and deported from the United States to Jamaica." *Id.* at 4. Finally, the Immigration Court added the following footnote:

> The Court would like to point that the Department of Homeland Security failed to act upon [Petitioner's] properly filed [A]pplication for Certificate of Citizenship in a timely manner. As such, [Petitioner] was never accord[ed] United States [c]itizenship.

> This court has no equitable power to compel a decision by the DHS, but would like to point out that it appears the DHS made its decision based upon the wrong statute. [Petitioner] applied under [former 8 U.S.C. § 1433 (1994)], not [former 8 U.S.C. § 1432 (1994)] as noted in their decision. Perhaps another court of competent jurisdiction will have an opportunity to consider this issue.

*Id.*

## II. DISCUSSION

The procedural history of Petitioner's experience with this nation's immigration system is troubling. Unfortunately, the resulting bureaucratic tangle has extended to the parties' briefing before this Court. The Court's docket contains cross-motions for summary judgment, a motion for judgment on the pleadings, and a response to a motion for judgment on the pleadings that contains summary judgment evidence. Proceeding through this thicket, the Court ultimately concludes that the dispositive issue is the Court's subject-matter jurisdiction. In doing so, the Court notes that Respondents' arguments for why this Court lacks jurisdiction are misplaced, and that the instant case is dismissed for reasons not raised by Respondents. *See* Fed. R. Civ. P 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

### A. Standard

#### i. Jurisdiction

■ Subject-matter jurisdiction is "the authority of the court to adjudicate the type of controversy involved in the action." *Carlisle v. United States,* 517 U.S. 416, 434–35, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (Ginsburg, J., concurring) (quoting Restatement (Second) of Judgments § 11

(1982)). "The district courts of the United States ... are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (internal quotation omitted). Because jurisdiction "is mandatory for an action in federal court," a case must be dismissed if jurisdiction is lacking. *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir.1995); *see also* FED.R.CIV.P. 12(h)(3).

■■■ Subject-matter jurisdiction must be addressed before other challenges, "since the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.1994) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 449 (5th Cir.1988)). However, a court should "consider[ ] more extensively the merits of the controversy" when "[t]he jurisdictional and substantive issues are factually meshed." *Spector v. L Q Motor Inns, Inc.*, 517 F.2d 278, 284 (5th Cir.1975); *see also Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 646 n. 11 (5th Cir.2002) (reviewing substantive issues when "critical to [the] adjudication" of jurisdiction). "[T]he trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir.2004). Finally, dismissals for lack of jurisdiction are not on the merits and are therefore without prejudice. *See, e.g., Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir.1996); *see also Verret v. Elliot Equip. Corp.*, 734 F.2d 235, 238 (5th Cir. 1984).

### ii. Petitioner's Pro Se Status

■■■ A court reviews pro se pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). At the same time, however, parties proceeding pro se are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir.1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient. . . ." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir.1989)).

### B. Petitioner's Application

Petitioner's Application, filed by his father on his behalf in 1996, was governed by former 8 U.S.C. § 1433 (1994). Under former § 1433(a), a citizen-parent may file an application for certificate of citizenship on behalf of their foreign-born child, and the Attorney General is required to issue that certificate upon proof of several conditions. 8 U.S.C. § 1433(a) (1994). Former § 1433(b) provides that "the child shall become a citizen" only "[u]pon approval of the application [and] upon taking ... the oath of allegiance. . . ." *Id.* § 1433(b).

The provisions of former § 1433 are unusual in one respect. Under other circumstances, an application for certificate of citizenship is filed when the applicant is already a citizen at the time of the filing. *See* 8 U.S.C. § 1452(a) ("A person who claims to have *derived* United States citizenship ... or who *is* a citizen of the United States ... may apply to the Attorney General for a certificate of citizenship.") (emphasis added). In that case, the certificate confirms a pre-existing status. However, by its plain language, former § 1433 requires an application for the certificate as a pre-requisite to obtaining that status. For this reason, the applicable

regulation at the time of Petitioner's Application referred to a § 1433 application as an "application for naturalization." *See* 8 C.F.R. § 322.2 (1996).[3] Petitioner was not a citizen when his Application was filed, and would be a citizen only if the Application was approved and Petitioner took an oath of allegiance.

■ Notably, the applicable regulation at the time of Petitioner's Application also provided that, to be eligible for naturalization, a child must be "under 18 years of age, both at the time of application and at the time of admission to citizenship[.]" *See id.*[4] Petitioner turned eighteen on June 28, 1998, and was not admitted to citizenship at that time. From that date forward, Petitioner was not eligible for citizenship through his father's application.[5] However, Petitioner's lack of eligibility was apparently unknown to Petitioner or the government, as Petitioner's Application remained unadjudicated for another eight years.

### C. Removal Proceedings

■ With Petitioner's Application unadjudicated and Petitioner yet to be naturalized on the date of his conviction or during his sentence, Petitioner was charged with removability as an alien who committed an aggravated felony. *See* 8 U.S.C. 1227(a)(2)(A)(iii). "A person who has been naturalized cannot be removed, and a person who has been removed cannot be naturalized." *Zayed v. United States*, 368 F.3d 902, 905 n. 4 (6th Cir.2004). When he was served with his Notice to Appear, Petitioner was in limbo—not yet nationalized nor removed.

Three days later, the CIS finally issued its Decision denying Petitioner's Application. That Decision contains several curious features. First, the Decision states that Petitioner's Application was "filed by [Petitioner] on January 10, 1996...." Pet. Ex. H–3. This is puzzling in light of the fact that Respondents provide a Notice of Interview which was mailed to Petitioner's father and stated that Petitioner's father filed Petitioner's Application. *See* Resp't's Resp. 3; *id.* Ex. C.

Second, the Decision denied Petitioner's Application because Petitioner "did not derive citizenship" under former 8 U.S.C. § 1432 (1994).[6] That statute provides that a child becomes a citizen "upon the fulfillment" of certain conditions. *Id.* Unlike former § 1433, former § 1432 does not require approval of an application or an oath before citizenship is attained. *See*

---

3. The Immigration and Nationality Act defines naturalization as "conferring of nationality of a state upon a person after birth, by any means whatsoever." 8 U.S.C. § 1101(a)(23). Because an applicant for certificate of citizenship under former § 1433 wishes to have citizenship conferred rather than confirmed, it is substantively an application for naturalization. *See, e.g., Marquez–Marquez v. Gonzales*, 455 F.3d 548, 557 (5th Cir.2006) (referring to application on behalf of child as "petition for naturalization").

4. The regulation in force at the time of the Application controls Petitioner's eligibility. *See, e.g., In re Rodriguez–Tejedor*, 23 I & N. Dec. 153, 156 (BIA 2001).

5. The Court notes that pursuant the Child Citizenship Act of 2000, Pub. L. No. 106–395, § 101, 114 Stat. 1631 (2000), someone in Petitioner's situation automatically becomes a citizen as of the date of their entry into the United States. However, the Child Citizenship Act of 2000 does not apply to Petitioner because he was not under eighteen on the date it took effect. *See Nehme v. INS*, 252 F.3d 415, 431 (5th Cir.2001).

6. These two issues—construction of Petitioner's Application under former § 1432 and a statement that the Application was filed by Petitioner—are not unrelated. Former § 1433 provides that an Application must be filed by a citizen-parent, while former § 1432 does not contain such a limitation.

*Lewis v. Gonzales,* 481 F.3d 125, 131 (2d Cir.2007) ("derivative citizenship is automatic"); *Bustamante–Barrera v. Gonzales,* 447 F.3d 388, 391 (5th Cir.2006) (former statute "automatically granted derivative citizenship to specified classes of children"). For this reason, a decision may deny an application under former § 1432 on the ground that the applicant had not yet acquired citizenship. However, a decision may not logically deny an application under § 1433 for the same reason, as the application is itself part of the process of attaining citizenship. Additionally, in considering the Application under former § 1432, the Decision states that Petitioner did not automatically derive citizenship as of the date of his Application because Petitioner's parents were never legally married, a fact which is not relevant under former § 1433. *See* Resp't's Resp. Ex. C; *see also* 8 U.S.C. § 1433 (1994).

Finally, the Decision was issued three days after Petitioner was served with a notice to appear. "[N]o application for naturalization shall be considered ... if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest...." 8 U.S.C. § 1429.[7] It is unclear whether the CIS believed that an application for certificate of citizenship under former § 1432 was not an application for naturalization and was therefore not barred by § 1429.[8] However, Petitioner's Application—filed under former § 1433—was in fact an application for naturalization. *See* 8 C.F.R. § 322.2 (1996).

At this point, Petitioner's situation was strange indeed. Petitioner's father had applied for Petitioner to become a citizen in the future, and Petitioner could only become a citizen if the Application was approved and Petitioner took the oath of allegiance before he turned eighteen. The opportunity to become a citizen under this Application then lapsed, apparently unbeknownst to Petitioner. Petitioner was subsequently served with a Notice to Appear in removal proceedings while his Application remained unadjudicated ten years after it was filed. Then, mere days later, instead of being told whether he could or could not become a citizen in the future, as the statute governing his Application had contemplated, Petitioner was told that he had not become a citizen in the past.

Petitioner's tangle was to become even less comprehensible. When the DHS filed a non-opposition to Petitioner's motion to terminate his removal proceedings, it conceded that Petitioner "facially meets the requirements" of former § 1433, but warned that "further action is required on his part." Resp't's Mot. Ex. E (bold, underline, and italics omitted). This statement is bewildering for several reasons. If the DHS believed that the Decision was correct and Petitioner's Application was filed under former § 1432, then there could be no further action required, as Petitioner either did or did not already acquire derivative citizenship. If the DHS believed that Petitioner's Application was in fact filed under former § 1433, then any further action would be futile, as Petitioner was over the age of eighteen by the time removal proceedings were terminated.

Under any scenario, when the DHS agreed to terminate Petitioner's removal proceeding if Petitioner "complet[es] the citizenship process within the next several

---

7. A notice to appear in removal proceedings is regarded as a warrant of arrest. *See* 8 C.F.R. § 318.1.

8. Because an applicant for certificate of citizenship normally seeks to confirm pre-existing citizenship, the applicant does not seek to be naturalized, and § 1429 does not apply by its plain language. *See* 8 U.S.C. § 1101(a)(23) (providing for applications for certificates of citizenship).

years," it imposed an impossible condition. Resp't's Mot. Ex. E (bold, underline, and italics omitted). Petitioner was given several years—though he was rearrested within several months—to pursue a path to citizenship, was given incoherent and contradictory indications as to how to follow that path, and was left unaware that that path *did not in fact exist.*

### D. Jurisdiction
#### i. Petitioner's Citizenship

■ Respondents argue that this Court is barred from considering the instant case by 8 U.S.C. § 1503(a), which provides, in pertinent part:

If any person who is within the United States claims a right or privilege *as a national of the United States* and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of [28 U.S.C. § 2201], against the head of such department or independent agency for a judgment *declaring him to be a national of the United States*, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this or any other act, or (2) *is in issue in any such removal proceeding.*

(emphasis added).

Respondents contend that Petitioner's citizenship is in issue in his removal proceedings. Resp't's Mot. 5.[9]

This Court holds that § 1503(a) does not apply to the instant case. To institute a 28 U.S.C. § 2201 declaratory judgment action pursuant to § 1503(a)—the action which Respondents claim is barred because Petitioner is in removal proceedings—one must claim a right or privilege as a citizen of the United States. *See, e.g., Vance v. Terrazas,* 444 U.S. 252, 256, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980) (claim that party is citizen because citizenship was not voluntarily renounced); *Rios–Valenzuela v. Dep't of Homeland Sec.,* 506 F.3d 393, 395 (5th Cir.2007) (claim that party became citizen when his mother was present in the United States "for one continuous year"). A court may then consider whether that person is in fact a citizen. *See* § 1503(a). However, a court may never create citizenship status where that status does not otherwise exist. *See* 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General.").

In the instant case, Petitioner does not claim a right or a privilege as a citizen; in fact, he does not claim he is a citizen.[10] Petitioner has been consistent in stating that his Application was filed under former § 1433, which specifically states that approval of the Application and an oath of allegiance are pre-requisites to citizenship. Petitioner's entire claim is based on the fact that neither approval nor an oath has yet occurred. Accordingly, whether Petitioner is a citizen is not in issue. Petitioner's claim is not barred by § 1503(a)'s prohibition on declaratory judgments dur-

---

9. For the purposes of the instant case, citizenship and nationality are coterminous concepts. *See* 8 U.S.C. § 1101(a)(22)(A).

10. It is unclear whether Respondents rely on the CIS's Decision for their argument that § 1503(a) applies. If Petitioner's Application proceeded under former § 1432, which gov-

erns automatic derivative citizenship, then Petitioner's claim would in fact be barred by § 1503(a), as this Court would be declaring whether Petitioner had obtained citizenship in the past. However, Respondents now concede that the Application was filed by Petitioner's father pursuant to former § 1433.

ing removal proceedings because there is nothing for this Court to declare. *See Baidas v. Jenifer*, 123 Fed.Appx. 663, 669 (6th Cir.2005) (unpublished) (reversing district court for, inter alia, dismissing case under § 1503(a) when party did not claim pre-existing citizenship).

While Petitioner is not a citizen and therefore may not be declared a citizen, he instead requests that the Court compel the government grant him citizenship. Pet'r's Mot. 6. Realizing that he may not currently be naturalized under former § 1433 because he is not currently under eighteen, Petitioner asks that this Court order Petitioner's Application to be processed and Petitioner to be declared a citizen *nunc pro tunc.* Pet. 26. Petitioner cites two cases in which a court ordered retroactive relief when, as here, an applicant under former § 1433 would have been eligible for citizenship but for the delay in processing the application. *See* Pet'r's Mot. 3 (citing *In re Petition of Tubig in Behalf of Tubig,* 559 F.Supp. 2, 4 (N.D.Cal.1981); *Harriott v. Ashcroft,* 277 F.Supp.2d 538, 545 (E.D.Pa.2003)).

As a threshold matter, it is unclear whether this Court ever has the power to order a naturalization application retroactively adjudicated. *See INS v. Pangilinan,* 486 U.S. 875, 883–84, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) ("the power to make someone a citizen ... has been given [to the federal courts] as a specific function to be performed in strict compliance with the terms of an authorizing statute...."). Assuming that this Court does have such power in theory, this Court does not have that power at this time. Under 8 U.S.C. § 1429, the Attorney General may not consider a naturalization application while removal proceedings are pending. *Id.* For this reason, the Court may not order Petitioner's Application to be considered. Nor may the Court consider the Application itself and then order that citizenship be granted. The Fifth Circuit has squarely held that a district court may only "address[ ] the administrative delay of a [naturalization] application that the Attorney General *may* consider." *Saba–Bakare v. Chertoff,* 507 F.3d 337, 340 (5th Cir.2007) (emphasis in original).[11] Because the Attorney General may not consider an application during removal proceedings, a party must "wait until the termination of the removal proceedings before *either a district court or the [ ]CIS* entertains a question regarding his naturalization application." *Saba–Bakare,* 507 F.3d at 337 (emphasis added).

Accordingly, § 1429 prevents this Court from ordering that Petitioner's Application be considered or from considering the Application itself. If—and only if—Petitioner prevails in his removal proceedings, he may again bring his action in this Court. If he does not prevail in removal proceedings, however, this Court may not order him naturalized. *See* § 1429 ("no person shall be naturalized against whom there is outstanding a final finding of deportability").

■■■ However, this Court may still consider whether the CIS had jurisdiction to issue its Decision. *See Saba–Bakare,* 507 F.3d at 340 (upholding district court's vacatur of CIS decision); *see also Zayed,* 368 F.3d at 906 ("the effect of § 1429 ... is to limit the scope of the court's review and circumscribe the availability of effective remedies, but not to oust the district court of jurisdiction"). The CIS lacked such jurisdiction. The CIS may not consider an

---

**11.** The Court reiterates that though Petitioner's Application was entitled an "Application for Certificate of Citizenship," it was in substance an application for naturalization. *See* 8 C.F.R. § 322.2 (1996); *Marquez–Marquez,* 455 F.3d at 557.

application when removal proceedings are pending pursuant to the issuance of a warrant of arrest. *See* 8 U.S.C. § 1429; *see* 8 C.F.R. § 318.1 (notice to appear considered warrant of arrest). Petitioner's first Notice to Appear was issued on December 14, 2006. The CIS Decision was issued on December 18, 2006. As removal proceedings were pending at that time, the CIS "had no statutory authority to consider [Petitioner's] naturalization application, and doing so was clearly an error." *Saba-Bakare*, 507 F.3d at 340. For that reason, "the initial denial of [Petitioner's] application has no continuing legal effect...." *Id.* Petitioner's Application, originally filed in 1996, remains unadjudicated to this day.

#### ii. Equitable Estoppel

▮▮▮▮ Finally, Petitioner requests that this Court hold that the Government is equitably estopped from denying his citizenship. *See* Pet. 18–21. Such a claim is cognizable under 28 U.S.C. § 2241, which provides for habeas corpus review to petitioners in custody "in violation of the Constitution or laws or treaties of the United States." Equitable estoppel is recognized as a doctrine of federal common law. *See, e.g., Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 878 (5th Cir.2005) (listing elements of equitable estoppel).[12] The Fifth Circuit has left open whether an equitable estoppel claim against the Government may ever succeed. *See Andrade v. Gonzales*, 459 F.3d 538, 545 n. 2 (5th Cir.2006).

This Court lacks jurisdiction to consider Petitioner's equitable estoppel claim. Petitioner has been placed in removal proceedings but no final order of removal has been issued against him. *See* 8 C.F.R. § 1241.1 (stating circumstances when or-

der of removal becomes final). This Court does not "have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases or execute removal orders against any alien under [the Immigration and Nationality] Act." 8 U.S.C. § 1252(g); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (courts may not review decisions representing "various stages in the deportation proceeding"). Accordingly, Section 1252(g) deprives this Court of jurisdiction to consider whether the Government is estopped from placing Petitioner in removal proceedings.

Nor may this Court hear a challenge to the Immigration Court's order:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States ... shall be available only in judicial review of a final order under this section.* Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under Section 2241 of Title 28, or any other habeas corpus provision ... or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added); *see also Aguilar v. U.S. Immig. & Customs Enf.*, 510 F.3d 1, 12 (1st Cir.2007) ("By its terms, [the provision's] expanse is breathtaking.").

In turn, "a petition for review filed with an appropriate court of appeals ... shall be

---

**12.** Those elements are: "(1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance." *Id.* To assert an equitable estoppel claim against the government, a party must also demonstrate affirmative misconduct. *Moosa v. INS*, 171 F.3d 994, 1003 (5th Cir.1999).

the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). In other words, to challenge his removal proceedings on estoppel grounds, Petitioner must wait until he is subject to a final order of removal, and may only appeal that final order of removal to the Fifth Circuit.[13]

Finally, the Court notes that although the Immigration Court and this Court lack jurisdiction to grant Petitioner the relief he seeks, Petitioner retains the opportunity to present his arguments to the Fifth Circuit if he is subject to a final order of removal. Title 8 U.S.C. § 1252(a)(2)(D) provides that the jurisdiction-stripping provisions of § 1252 shall not be "construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." When considering an appeal from a final order of removal, the Fifth Circuit has repeatedly addressed legal and constitutional questions which collaterally challenge that order. *See, e.g., Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733, 736 (5th Cir.2005) (due process); *Arce–Vences v. Mukasey*, 512 F.3d 167, 170 (5th Cir. 2007) (definition of aggravated felony). In several cases, the Fifth Circuit has specifically considered whether the Government is equitably estopped from denying a party's citizenship. *See, e.g., Miller v. Gonzales*, 166 Fed.Appx. 769, 771 (5th Cir. 2006) (unpublished); *Ogelsby v. Gonzales*, 180 Fed.Appx. 526, 526 (5th Cir.2006) (unpublished).

## III. CONCLUSION

Whether Petitioner is eventually removed, Petitioner deserves to be apprised of his legal status by those charged with carrying out his removal. He has not been. Despite having to untangle the unavoidable mass of applicable laws and the quite-avoidable administrative confusion and mixed messages, Petitioner somehow presented a logical and legally sound argument to this Court. Lacking subject matter jurisdiction, this Court expresses no opinion on the merits of that argument. It may only reiterate that "[p]erhaps another court of competent jurisdiction will have an opportunity to consider this issue." Pet'r's Supplemental Br. Ex. SB–1 at 2.

For the reasons outlined above, Petitioner's "[Petition for] Writ of Mandamus [U]nder 28 U.S.C. § 1361[,] Motion Pursuant to [ ] 28 U.S.C. § 2241[, a]nd Complaint for Declaratory Judgment Pursuant to [ ] 28 U.S.C. § 2201" (**Doc. No. 5**) is hereby **DISMISSED** without prejudice.

The Department of Homeland Security ("DHS") Decision, dated December 18, 2006 (**Pet. [Doc. No. 5] Ex. H–2**), is hereby **VACATED** as improvidently granted.

**THE CLERK SHALL CLOSE THE CASE.**

**SO ORDERED.**

---

13. The Court confines its holding to the application of § 1252(b)(9) to claims that the Government is equitably estopped from denying a person's citizenship.